[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio Patrolmen's Benevolent Assn. v. Findlay,* Slip Opinion No. 2017-Ohio-2804.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-2804

OHIO PATROLMEN'S BENEVOLENT ASSOCIATION ET AL., APPELLANTS, *v.* THE CITY OF FINDLAY, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio Patrolmen's Benevolent Assn. v. Findlay,* Slip Opinion No. 2017-Ohio-2804.]

*Arbitration—Any limitation on an arbitrator's authority to modify a disciplinary action pursuant to a collective bargaining agreement ("CBA") provision requiring that discipline be imposed only for just cause must be specifically bargained for by the parties and incorporated into the CBA—CBA placed no limitation on arbitrator's authority to review disciplinary action imposed and fashion a remedy—Arbitrator's award draws its essence from CBA, and arbitrator acted within his authority—Court of appeals' judgment reversed, award reinstated, and cause remanded.*

(No. 2015-1581—Submitted February 7, 2017—Decided May 17, 2017.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 102282, 2015-Ohio-3234.

_____

**O'DONNELL, J.**

{¶ 1} The Ohio Patrolmen's Benevolent Association ("OPBA") and Sergeant David Hill of the Findlay Police Department appeal from a judgment of the Eighth District Court of Appeals affirming a common pleas court decision that vacated an arbitration award that changed the disciplinary sanction recommended by the chief of police against Hill from termination to a lengthy suspension. The issue presented on this appeal is whether the collective bargaining agreement between the city of Findlay and the OPBA requiring that discipline be imposed only for just cause authorized the arbitrator to change the sanction recommended by the chief of police in accordance with the department's matrix of discipline.

### Facts and Procedural History

{¶ 2} The Findlay police department hired David Hill in 1992 as an auxiliary police officer; in 1999 he became a patrolman, and in 2005 he was promoted to sergeant. The department's disciplinary procedures include a "discipline matrix" setting forth progressive levels of discipline based on the seriousness of the offense and the number of prior violations and providing that "[i]f more than one discipline level is indicated, the Chief of Police has sole discretion in determining which of the two levels is appropriate, based on the facts of the case and history of the involved employee."

{¶ 3} Hill is a member of the OPBA, and that organization is a party to a collective bargaining agreement ("CBA") with the city containing a provision that discipline shall be imposed only for just cause and establishing a grievance procedure which includes binding arbitration.

### The July 2012 Incidents

{¶ 4} On July 6, 2012, Hill helped to create a video of him using a taser against the son of a fellow officer which violated the department's social media policy, resulting in a written reprimand for his conduct. On July 27, 2012, Hill made disparaging comments about another fellow officer's mental health and

placed the barrel of his service weapon into his own mouth. As a result of that incident, Chief of Police Gregory Horne recommended that Hill be suspended for 30 days with 15 days stayed for conduct unbecoming an officer. Hill then filed a grievance, but the city's safety director agreed with the recommendation and denied it, and as a result, the matter was scheduled for arbitration on November 28, 2012.

*The November 2012 Incident*

{¶ 5} On November 13, 2012, after the midnight shift roll call, Hill referred to Officer Morgan Greeno as "Whoregan" in response to a question about the committee coordinating an upcoming Fraternal Order of Police Christmas party. Greeno filed a complaint because she thought the comment could have been related to her scheduled testimony against Hill at the arbitration hearing. She also claimed that Hill had made and condoned comments based on the running joke that she was pregnant with the baby of a municipal building custodian.

*The First Arbitration*

{¶ 6} Jonathan Klein arbitrated the July 27 incident, found the city had just cause to discipline Hill for that incident but that Chief Horne's recommendation of a 30 day suspension with 15 days stayed "exceeded the disciplinary matrix without justification," and therefore reduced the disciplinary action to a ten day suspension in accordance with the matrix. Noting Chief Horne's testimony that the city is not required to and does not always follow the matrix, the arbitrator determined that "under the principles of just cause, the City cannot simply pick and choose when it will apply the Discipline Matrix to a particular infraction warranting discipline." The arbitrator declined to address the OPBA's contention that it had never agreed to the matrix because the record on that issue was not "sufficiently developed."

*The Second Arbitration*

{¶ 7} Following an investigation of the November 13 incident, Chief Horne concluded Hill had violated several department rules and regulations, "the most serious" being the department's sexual harassment policy, and he applied the matrix

3

to recommend Hill's termination. Hill filed a grievance asserting no just cause for his termination and that the chief's application of the matrix violated the CBA. The safety director agreed with the chief's recommended termination and denied Hill's grievance.

{¶ 8} James Mancini arbitrated this matter and granted in part and denied in part the grievance. Mancini found the evidence did not clearly demonstrate Hill had violated the department's sexual harassment policy and therefore set aside the discharge penalty; however, he concluded that the city had "just cause to impose severe discipline" because Hill had engaged in conduct unbecoming an officer and had failed to properly carry out his supervisory duties. Mancini noted Klein's decision "concerning the department's Discipline Matrix Guidelines" and concluded that the matrix "should be applied in this case" and that it indicated two levels of discipline, i.e., "the discipline could range from a 3-10 day suspension up to termination." He determined a "lengthy disciplinary suspension is warranted" and ordered that Hill be reinstated with full seniority but no back pay.

{¶ 9} Hill and the OPBA filed an application in the common pleas court to enforce the arbitration award, claiming that the city refused to reinstate him and seeking lost wages, benefits, and seniority and interest, attorney fees, and court costs. The city filed an application to vacate and/or modify the award. The common pleas court consolidated the appeals and vacated the award pursuant to R.C. 2711.10(D), concluding that after Mancini had determined that the matrix should have been applied, he "exceeded and imperfectly executed his power" by departing from the matrix's plain language, which gives sole discretion to the chief of police to choose between a three to ten day suspension or termination.

{¶ 10} In a split decision, the court of appeals affirmed the judgment of the common pleas court, concluding the arbitration award did not draw its essence from the CBA and was arbitrary, capricious, and unlawful. The majority explained the arbitrator "interpreted the CBA (and its just cause standard for disciplinary action)

4

as requiring the application of the discipline matrix to determine the appropriateness of the discipline imposed." 2015-Ohio-3234, 40 N.E.3d 610, ¶ 41. The majority held that after determining the matrix applied and indicated two levels of discipline, the arbitrator lacked "arbitral authority to modify the disciplinary action imposed, which under the discipline matrix and the CBA was within the 'sole discretion' of Chief Horne." *Id.* at ¶ 43. The dissenting judge opined that the disciplinary procedures and matrix were not part of the CBA, that the arbitrator had full authority to fashion a remedy, and that even if the procedures and matrix were part of the CBA, the choice of discipline was still subject to the just cause standard in the CBA.

{¶ 11} The OPBA and Hill appealed, and we accepted the following proposition of law for review: "Any limitation on an arbitrator's ability to review and modify disciplinary action under the 'just cause' standard must be specifically bargained for by the parties and contained within the four corners of the collective bargaining agreement."

### Positions of the Parties

{¶ 12} The OPBA and Hill contend that any limitation on an arbitrator's authority to modify discipline pursuant to a CBA that requires discipline to be imposed for just cause must be specifically bargained for and incorporated into the CBA and in this case, the disciplinary procedures and the matrix were unilaterally adopted by the city and therefore do not meet this standard. They also claim that Articles 4.01 and 10 of the CBA, which permit the department to develop work rules and require OPBA members to comply with them, do not incorporate the matrix into the CBA, and they analogize this case to *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 742 N.E.2d 630 (2001) ("*SORTA*"). The OPBA and Hill thus maintain that Mancini had authority to modify the discipline in this matter, properly used the matrix for

guidance, and fashioned an appropriate remedy in light of the city's failure to prove its most serious allegation against Hill.

{¶ 13} The city contends that an arbitrator's authority to modify a disciplinary action if he finds that there is not just cause to impose it is limited by the predetermined penalties in the matrix which the city had authority to establish pursuant to Articles 4.01 and 10 of the CBA. The city asserts that it did not unilaterally adopt the matrix because the OPBA agreed its members would abide by department rules and participated in the creation of the matrix. Thus, the city claims Mancini was required to apply the matrix in this matter, including its language granting the chief sole discretion to choose between two levels of discipline. And the city claims that Klein determined the city could not impose discipline contrary to the matrix and that these parties are bound by that decision.

## Issue

{¶ 14} The issue presented here is whether the just cause for discipline provision of the CBA authorized Mancini to change the disciplinary action recommended by the chief of police pursuant to the matrix.

## Law and Analysis

{¶ 15} "The public policy favoring arbitration requires that courts have only limited authority to vacate an arbitrator's award." *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland*, 99 Ohio St.3d 476, 2003-Ohio-4278, 793 N.E.2d 484, ¶ 13. R.C. 2711.10(D) provides that the court of common pleas "shall make an order vacating the award upon the application of any party to the arbitration if * * * [t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made," and R.C. 2711.15 authorizes an appeal from such an order.

{¶ 16} "An arbitrator derives his authority from the express terms of the collective-bargaining agreement between the parties." *Fostoria v. Ohio*

6

*Patrolmen's Benevolent Assn.*, 106 Ohio St.3d 194, 2005-Ohio-4558, 833 N.E.2d 720, ¶ 11. "Arbitrators act within their authority to craft an award so long as the award 'draws its essence' from the contract—that is, 'when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful.' " *Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 7, quoting *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 488 N.E.2d 872 (1986), paragraph one of the syllabus. "[A]n award 'departs from the essence of a [contract] when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement.' " (Brackets sic.) *Id.*, quoting *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177, 572 N.E.2d 71 (1991), syllabus.

{¶ 17} "Where an arbitrator's decision draws its essence from the collective bargaining agreement, and in the absence of language in the agreement that would restrict such review, the arbitrator, after determining that there was just cause to discipline an employee, has the authority to review the appropriateness of the type of discipline imposed." *Bd. of Trustees of Miami Twp. v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 81 Ohio St.3d 269, 690 N.E.2d 1262 (1998), syllabus. "An arbitrator has broad authority to fashion a remedy, even if the remedy contemplated is not explicitly mentioned in the labor agreement." *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati*, 63 Ohio St.3d 403, 407, 588 N.E.2d 802 (1992).

{¶ 18} Article 41.03 of the CBA[1] provides: "The arbitrator shall have no power or authority to add to, subtract from, or in any other manner alter the specific

---

[1] The court of appeals recognized the parties' apparent disagreement as to whether the version of the CBA effective January 1, 2011, to December 31, 2012, or January 1, 2013, to December 31, 2015, governs this matter. The court noted that it was unclear from the record which version Mancini had used and determined that it did not need to resolve the issue, because the relevant

terms of this Agreement * * * nor to make any award that * * * violates any of the terms and conditions of this Agreement." Article 39.07 states: "Discipline shall be imposed only for just cause." And Article 4.01(5) similarly reserves the city's right to "suspend, discipline, demote, or discharge for just cause."

{¶ 19} Here, Mancini stated the matrix "should be applied in this case," but he did not find that a specific provision in the CBA mandated application of the matrix, nor could such a finding be rationally derived from the terms of the agreement. The CBA does not mention the police department's disciplinary procedures or the matrix, and no language in the CBA restricts an arbitrator's authority to review the appropriateness of the type of discipline imposed after the arbitrator has determined that there is just cause to discipline an employee for the type of misconduct at issue in this matter.

{¶ 20} The city's reliance on Articles 4.01 and 10 of the CBA is misplaced. Article 4.01 states:

> Unless expressly provided to the contrary by a specific provision of this Agreement, the Employer reserves and retains, solely and exclusively, all of its statutory and common law rights to manage the operation of its Department of Police. Employer[']s rights shall include, but are not limited to, the following: the right to * * * (10) develop, revise, or eliminate work practices, procedures and rules in the operation of the Department of Police and to maintain discipline * * *.

{¶ 21} Article 10.01 of the CBA states:

---

provisions in both versions were "substantively similar, if not identical." 2015-Ohio-3234, 40 N.E.3d 610, at ¶ 11, fn. 1. Because the exhibits from the arbitration include only a copy of the version of the CBA effective January 1, 2013, to December 31, 2015, we quote from that version in this opinion.

> The Union agrees that its membership shall comply with Police Department and City of Findlay Rules and Regulations, including those relating to working conditions, conduct, and performance. The Employer agrees that Police Department and City of Findlay Rules and Regulations, which affect working conditions, conduct, and performance shall be subject to the grievance procedure if they violate this Agreement.

Article 10.02 requires the parties to add any proposed changes to the rules and regulations "to the discussion agenda of the next Labor-Management Committee meeting," and Article 10.03 generally requires the city to notify the OPBA of changes in writing at least 14 days prior to their proposed effective date.

{¶ 22} In *SORTA*, 91 Ohio St.3d 108, 742 N.E.2d 630, the employer terminated a union employee for violating a drug policy which called for automatic termination of an employee who tested positive for marijuana. An arbitration panel found the policy facially valid but determined that the automatic discharge sanction conflicted with, and thus violated, a provision of the CBA requiring sufficient cause for discharge. The arbitration panel reinstated the employee, finding no sufficient cause for discharge under the circumstances. A common pleas court affirmed the arbitration award, but the court of appeals reversed it and remanded with instructions to vacate the award.

{¶ 23} We reversed the court of appeals and ordered reinstatement of the arbitration award, explaining that the employer had adopted the drug policy pursuant to a section of the CBA but that "any sanction for a violation of a rule adopted" pursuant to that section "was subject to the 'sufficient cause' standard" contained in a separate section of the CBA. *Id.* at 110. We noted that the Tenth Circuit Court of Appeals has held that although a CBA gave an employer

"the right * * * to make necessary reasonable rules and regulations for the conduct of business, providing that said rules and regulations are not in conflict with the terms of [the CBA] in any way," * * *, the right to make such rules is not the right to equate the violation of such rules with "good and sufficient cause" for termination. To hold otherwise would be to allow [the employer] to unilaterally define the meaning of "good and sufficient cause," a right which was not contemplated by the CBA and for which [the employer] must negotiate with the Union.

(Ellipses and first brackets sic and emphasis deleted.) *Id.* at 111, quoting *Local No. 7 United Food & Commercial Workers Internatl. Union v. King Soopers, Inc.*, 222 F.3d 1223, 1227 (10th Cir.2000).

{¶ 24} We agreed with and applied this reasoning to conclude:

SORTA did not have the right to *unilaterally* adopt automatic termination * * * as a sanction for testing positive, because such a sanction conflicts with the "sufficient cause" requirement for dismissal found in * * * the CBA. Just as the court noted in *King Soopers*, allowing SORTA to enforce automatic termination would allow an employer to unilaterally adopt a sanction that conflicts with the sufficient-cause requirement for dismissal that was negotiated into the CBA, thereby undermining the integrity of the entire collective bargaining process. The proper avenue for SORTA to adopt such a sanction would be through the collective bargaining process, not through a unilateral decision.

(Emphasis sic.)  *Id.*

{¶ 25} Similarly, in this case, although the CBA reserves the city's right to develop work rules and obligates OPBA members to comply with those rules, the city's right to develop rules is not a right to determine what particular form of discipline it has just cause to impose for a violation of those rules.  Stated differently, the city's right to develop rules is not the right to unilaterally define the meaning of the phrase "just cause" for purposes of the CBA—a right that is not contemplated by the agreement.  Moreover, the discipline matrix is not subject to the grievance procedure pursuant to Article 10.01, because it is not a rule affecting "working conditions, conduct, and performance," but even if it were and the OPBA had the rights to notice and an opportunity to be heard pursuant to Articles 10.02 and 10.03 with respect to adoption of the matrix, such rights would not operate to incorporate the matrix into the CBA.  Pursuant to Article 46.01 of the CBA, to qualify as an appendix or amendment to the CBA, the matrix had to be signed by both the city and the OPBA.  It was not.

{¶ 26} Finally, the city's reliance on Klein's decision is misplaced because he did not reach the issue whether the OPBA had agreed to the matrix but instead took issue with the city's arbitrary application of the matrix and the city's decision to depart from it without justification.

{¶ 27} Although nothing in the CBA precludes the city from using the matrix as a guide in imposing discipline, treating the matrix as binding on the arbitrator would conflict with the just cause requirement for discipline that the city and the OPBA negotiated into the CBA and as in *SORTA*, would undermine the integrity of the entire collective bargaining process.

{¶ 28} Because the parties did not specifically bargain for the matrix and incorporate it into the CBA, Mancini had authority to review the appropriateness of the disciplinary action imposed in this matter and broad authority to fashion a remedy.  His choice of remedy does not conflict with the express terms of the CBA,

is rationally derived from the terms of the agreement, and is not arbitrary, capricious, or unlawful. Therefore, the arbitration award draws its essence from the CBA.

**Conclusion**

{¶ 29} Any limitation on an arbitrator's authority to modify a disciplinary action pursuant to a CBA provision requiring that discipline be imposed only for just cause must be specifically bargained for by the parties and incorporated into the CBA. Here, the CBA placed no limitation on the arbitrator's authority to review the disciplinary action imposed and fashion a remedy. Because Mancini's award draws its essence from the CBA and because he acted within his authority, we reverse the judgment of the court of appeals, reinstate the award, and remand this matter to the common pleas court for further proceedings consistent with this opinion.

Judgment reversed,

arbitration award reinstated,

and cause remanded.

KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

O'CONNOR, C.J., dissents, with an opinion.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 30} I dissent. I would hold that this court improvidently accepted the discretionary appeal and would dismiss the cause.

{¶ 31} We accepted the following proposition of law: "Any limitation on an arbitrator's ability to review and modify disciplinary action under the 'just cause' standard must be specifically bargained for by the parties and contained within the four corners of the collective bargaining agreement." *See* 144 Ohio St.3d 1475, 2016-Ohio-467, 45 N.E.3d 243. I dissented from the decision to accept jurisdiction. And after consideration of the parties' briefs and oral argument, it is

even more clear that we accepted the appeal in error. Appellants, David Hill and the Ohio Patrolmen's Benevolent Association ("OPBA"), ask us only to interpret a contract based on well-settled contract law. Moreover, appellants ask us to do so on a record that contains very little evidence.

{¶ 32} In their merit brief, appellants admit that "the Eighth District correctly recited the applicable law and properly framed the issue in dispute between the parties," before asking us to correct an error they perceive in the court of appeals' application of that law: the finding that the arbitrator exceeded his authority under the collective-bargaining agreement ("CBA") between the OPBA and the city by fashioning a remedy outside of the city's discipline matrix. The crux of appellants' argument is that the discipline matrix had not been incorporated into the CBA and thus did not limit the arbitrator's authority to fashion a remedy.

{¶ 33} Appellants are correct that the law is already clear on the issues inherently raised in their proposition. The Ohio Constitution charges us to exercise our discretionary jurisdiction in "cases of public or great general interest," Article IV, Section 2(B)(2)(e), and this case presents neither. As a court of last resort, it is not our role to consider allegations that a lower court has erred in applying established law but, rather, to set forth legal interpretations to guide the lower courts. *See State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095, ¶ 63 (O'Donnell, J., dissenting) ("[W]e are not an error-correcting court; rather, our role as the court of last resort is to clarify confusing constitutional questions, resolve uncertainties in the law, and address issues of public or great general interest * * *. Significantly, appellate courts consider assignments of error, while this court considers propositions of law. The two are materially and substantively different").

{¶ 34} We have previously interpreted the law at issue in this case and have held that " '[t]he arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract

language, he is without authority to disregard or modify plain and unambiguous provisions.' " *Office of Collective Bargaining v. Ohio Civil Serv. Emps. Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177, 180, 572 N.E.2d 71 (1991), quoting *Detroit Coil Co. v. Internatl. Assn. of Machinists & Aerospace Workers, Lodge No. 82*, 594 F.2d 575, 579 (6th Cir.1979). It is also well settled that "[w]here an arbitrator's decision draws its essence from the collective bargaining agreement, and in the absence of language in the agreement that would restrict such review, the arbitrator, after determining that there was just cause to discipline an employee, has the authority to review the appropriateness of the type of discipline imposed." *Bd. of Trustees of Miami Twp. v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 81 Ohio St.3d 269, 690 N.E.2d 1262 (1998), syllabus. Any further legal pronouncements are unnecessary, and we should not entertain the invitation to consider whether a lower court incorrectly applied settled law.

{¶ 35} But even if the law were unsettled, this case is not a proper vehicle to address the proposition. The record lacks sufficient evidence to enable this court to determine whether the discipline matrix was incorporated into the CBA. Although counsel for appellants argued in her opening statement at the arbitration hearing that "this so-called matrix * * * is not a part of any collective bargaining agreement," appellants offered no testimony to support that assertion. However, one of the city's witnesses testified that the union had used the matrix to negotiate a reduction in the disciplinary action imposed in another officer's case and that Hill actually had helped negotiate the matrix, a fact that he did not dispute.

{¶ 36} Moreover, Hill previously used the discipline matrix to his advantage. In an earlier arbitration involving Hill, the arbitrator reduced Hill's discipline from a 30-day suspension to a 10-day suspension, finding that the matrix permitted only a 10-day suspension. The arbitrator in the prior case noted that "[a]lthough the Union asserted at the hearing that it never agreed to the City's Discipline Matrix, * * * the record in this case is not sufficiently developed as it

concerns a challenge to the reasonableness of the matrix itself, as opposed to its application in this case." The arbitrator of the present grievance assumed that the matrix was applicable but reduced the recommended disciplinary action because he found that the city failed to prove all its allegations against Hill and had failed to establish that it was justified in terminating him.

{¶ 37} Although the record lacks any testimony that the discipline matrix had been incorporated into the CBA, it is also devoid of testimony that it had not been. The majority nevertheless bases its decision on this issue that was not litigated below.

{¶ 38} Finally, the majority's conclusion that "[a]ny limitation on an arbitrator's authority to modify a disciplinary action pursuant to a CBA provision requiring that discipline be imposed only for just cause must be specifically bargained for by the parties and incorporated into the CBA," majority opinion at ¶ 29, is overbroad and may have unintended consequences. This conclusion violates at least one longstanding tenet of labor law—that "[t]he labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-582, 80 S.Ct 1347, 4 L.Ed.2d 1409 (1960); *see also Assn. of Cleveland Fire Fighters, Local 93 of the Intl. Assn. of Fire Fighters v. Cleveland*, 99 Ohio St.3d 476, 2003-Ohio-4278, 793 N.E.2d 484, ¶ 16, 19 (recognizing that past practice may be binding on parties to a CBA in certain circumstances, even when the practice is not set forth in the CBA). By acceding to appellants' proposition that "[a]ny limitation on an arbitrator's ability to review and modify disciplinary action under the 'just cause' standard must be specifically bargained for by the parties and contained within the four corners of the collective bargaining agreement," the majority opinion may

prevent an employer from relying on past practice as the basis for a disciplinary action.

{¶ 39} Past practice may be binding, even if it is not set forth in a CBA, and could limit an arbitrator's ability to modify a disciplinary action. For instance, an employer may claim that it disciplined an employee according to its uncontested practice of imposing the same disciplinary action for a similar violation over a period of years. Under the majority opinion, even if the employer establishes a past practice, the arbitrator could modify the discipline if the employee shows that the practice had not been specifically bargained for and incorporated into the CBA, upending labor law that has been settled for decades. Without the development of facts regarding the full extent of the terms of the CBA here, the majority creates an unnecessary rule to reach a particular result.

{¶ 40} For these reasons, I respectfully dissent and would hold that the discretionary appeal was improvidently accepted.

_____

Joseph M. Hegedus and Daniel J. Leffler, for appellants.

Allain Legal, Ltd., William F. Schmitz, and Eric M. Allain, for appellee.

Paul L. Cox, urging reversal for amicus curiae Fraternal Order of Police of Ohio, Inc.

R. Brian Moriarty and Marisa L. Serrat, urging reversal for amici curiae Cleveland Police Patrolmen's Association, Toledo Police Patrolman's Association, and Dayton Fraternal Order of Police Lodge 44.

Greg Gordillo, urging reversal for amicus curiae Ohio Employment Lawyers Association.

_____