[Cite as *Cuyahoga Cty. v. United Autoworkers Region 2-B, Local 70, Corr. Officer Corporals' Bargaining Unit*, 2020-Ohio-3965.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

CUYAHOGA COUNTY, :

    Plaintiff-Appellee, :

                       No. 108411

    v. :

UNITED AUTOWORKERS REGION :
2-B, LOCAL 70, CORRECTION
OFFICER CORPORALS' BARGAINING :
UNIT,

                     :

    Defendant-Appellant.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** August 6, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-886333

---

### *Appearances:*

Greg Huth, Cuyahoga County Director of Law, and Todd
M. Ellsworth and Sarah A. Nemastil, Assistant Directors
of Law, *for appellee.*

Goldstein Gragel, L.L.C., Richard L. Stoper, Jr., and Joyce
Goldstein, *for appellant.*

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Defendant-appellant, United Autoworkers Region 2-B, Local 70, Correction Officer Corporals' Bargaining Unit ("the Union"), appeals an order vacating an arbitration award of suspension and reinstatement without back pay on behalf of Corporal Brendan Johnson ("Johnson"). The Union claims the following four errors:

> 1. The lower court erred by vacating the arbitrator's award of suspension and reinstatement on the ground that the award violated public policy.
>
> 2. The lower court erred by making a de novo finding of fact that Corporal Johnson was a "safety risk."
>
> 3. The lower court erred in holding that the county did not waive its claim that suspension and reinstatement violated public policy by failing to raise that issue before the arbitrator.
>
> 4. The lower court erred by failing to confirm the award and award back pay from the date Corporal Johnson was reinstated.

{¶ 2} We find merit to the appeal, reverse the trial court's judgment, and reinstate the arbitrator's award.

## I. Facts and Procedural History

{¶ 3} Johnson began working as a corrections officer in the Cuyahoga County Corrections Center ("the jail") in January 2000. In 2010, Johnson was promoted to a corrections officer corporal, a ranking officer with a higher standard of conduct. As a corrections officer corporal, Johnson was responsible for supervising lower ranking corrections officers and performing duties that required interactions with inmates.

**{¶ 4}** In June 2017, plaintiff-appellee, Cuyahoga County ("the County"), notified Johnson that he was being removed from his position of corrections officer corporal as a result of two incidents that occurred in May 2016. The County claimed that Johnson made "unnecessary" contact and used excessive force against two female inmates in violation of Rules #81 and #82 of the Standard Schedule of Disciplinary Offenses and Penalties for Employees of the Cuyahoga County Sheriff's Office ("the Schedule").

**{¶ 5}** The Schedule provides a range of penalties for each rule violation and states that although penalties for disciplinary offenses will generally fall within the provided range, penalties outside the range may be imposed "depending on the gravity of the offense, the past record, and the position of the employee." With respect to Rule #82, the Schedule provides that for a first offense, the minimum penalty is a 15-day suspension and the maximum penalty is "removal." For a second offense committed within a three-year "reckoning period" of the first offense, the Schedule only provides one penalty: "removal."

**{¶ 6}** On May 8, 2016, Johnson responded to a call involving a female inmate with a known history of noncompliance, who had flooded her cell by intentionally jamming her toilet and causing it to overflow. Johnson ordered D.J. to come down from her bunk and, after a period of defiance, she complied with Johnson's directive. Johnson asked her why she flooded her cell, but she did not answer. Johnson repeated the question, and D.J. remained nonresponsive. When asked why she was not answering his questions, D.J. responded that she did not

want to talk to Johnson.  As a result of D.J.'s failure to comply, Johnson deployed pepper foam to her face, while simultaneously telling her: "I told you I would get you."  This was the fourth interaction during his shift that Johnson had with D.J. due to her disruptive behavior.

{¶ 7} Two days later, on May 10, 2016, Johnson responded to the mental health unit to assist a corrections officer with a female inmate, who was refusing to disrobe.  Johnson led the inmate into her cell and ordered her to remove her clothing.  After repeated directives, A.L. complied while dancing, gyrating, and looking toward Johnson singing repeatedly, "wanting to see my titties and make pedophiles happy."  Removing her clothes from the waist up, A.L. turned her back to Johnson and bent over in a seductive manner to remove her pants.  According to Johnson, A.L. brushed against him.  Consequently, Johnson deployed a leg sweep, causing her to fall to the ground.  Once on the ground, A.L. failed to comply with Johnson's repeated commands to "stop resisting and to give up her hands."  Johnson then sprayed pepper foam into A.L.'s face and eyes while she was on the ground.  As previously stated, Johnson was terminated as a result of these incidents.

{¶ 8} Johnson appealed the termination of his employment pursuant to the grievance procedure outlined in the collective bargaining agreement ("CBA") between the County and the Union.  The United Autoworkers Region 2-B, Local 70, represents a bargaining unit of corrections officer corporals employed by the County to work in the Cuyahoga County Sheriff's Department, which operates the jail.  The grievance procedure was followed, the County denied the grievance following a

"Step 3" hearing, and the Union appealed the matter to arbitration, arguing that Johnson acted appropriately under the circumstances. The Union also asserted that termination was an excessive penalty in light of Johnson's 16-year career at the jail, during which he received excellent performance reviews. During his tenure at the jail, Johnson was promoted to the position of corporal and was encouraged to apply for additional promotions.

{¶ 9} The County argued that Johnson's removal was justified based on his prior use of excessive force and his continued violation of the use-of-force policy. The County maintained that termination was warranted under the Schedule since Johnson not only used excessive force against D.J. and A.L., but he had also previously served a three-day suspension for using excessive force against a male inmate in August 2015.

{¶ 10} In August 2017, the arbitrator issued a decision and found that the County was justified in imposing discipline against Johnson for using excessive force during the May 8, 2016 and May 10, 2016 incidents. The arbitrator found, among other things:

> The video of these incidents along with witness testimony demonstrates that on those two occasions, involving two different inmates, Johnson took unnecessary and excessive steps to subdue and pepper foam inmates, one of which involved an inmate who was mentally challenged.

(Arbitration decision at 15.) The arbitrator found, however, that the May 8, 2016 incident involving D.J. was less serious than the May 10, 2016 incident because D.J.

had a reputation for being disrespectful and aggressive. The arbitrator found, in relevant part:

> While the arbitrator finds the Grievant took inmate D.J. to the cell floor and pepper foamed her without the presence of an immediate act of aggression on her part, in this particular set of circumstances and given the proclivity of the inmate to suddenly act out aggressively, the Grievant's pre-emptive action in applying excessive force while improper, was not devoid of explanation. * * * Therefore, on May 8, 2016, there were mitigating factors present to explain, while not excusing the Grievant's lapse in judgment.

(Arbitrator's decision at 16-17.)

{¶ 11} With respect to the May 10, 2016 incident, the arbitrator found:

> The weight of all the evidence and testimony regarding the incident involving inmate A.L. demonstrates that in this matter[,] the level of resistance from inmate A.L., who was placed on Full Precautions, did not justify the amount of force employed by the Grievant. A.L. is a mentally challenged individual, and unlike the history and circumstances of conduct that proceeded the May 8th incident involving inmate D.J.[,] the record did not indicate that inmate A.L. was known to have been repeatedly violent or aggressive. The Grievant's use of force in this situation was clearly excessive, and the Grievant escalated the situation by engaging in physical contact rather than resorting to an alternative methodology. Fortunately his actions did not result in injury to this inmate, but from the video the avoidance of injury appeared to be simply a matter of luck.

(Arbitrator's decision at 19.)

{¶ 12} Despite finding that Johnson used excessive force during the May 8, 2016 and May 10, 2016 incidents, the arbitrator concluded that the County lacked just cause to terminate Johnson and vacated Johnson's termination. He found that termination was not an appropriate penalty and documented that Johnson was "a long-term employee with 16 years of service marked by consistently favorable

evaluations since the year 2000," and that progressive discipline requires that "[a]n employee should not be terminated until and unless it is clear that he will not or cannot respond favorably to lesser penalties imposed with progressive severity." (Arbitrator's decision at 22.)

{¶ 13} As for discipline, the arbitrator ordered a 15-month time-served suspension, absent any back pay or benefits, with the exception of restoring all sick-leave hours and 80 hours of vacation pay. The arbitrator also bridged Johnson's seniority and directed Johnson to undergo retraining on use-of-force situations and the handling of mentally impaired inmates.

{¶ 14} In reaching this conclusion, the arbitrator explained that termination was an excessive penalty in light of Johnson's 16 years of service and excellent performance evaluations. Although Johnson served a three-day suspension in 2015, for using excessive force, the arbitrator noted that the 2015 incident was not serious since Johnson only served a three-day suspension even though the Schedule called for a 15-day suspension for a first offense.

{¶ 15} The County refused to reinstate Johnson and filed a motion in the common pleas court to vacate the arbitrator's award pursuant to R.C. 2711.10(D). The County argued the arbitrator exceeded his powers because (1) the CBA did not provide for progressive discipline, (2) the CBA gave the employer the exclusive authority to determine discipline if the arbitrator found "just cause" for discipline, and (3) the arbitrator's decision to reinstate Johnson's employment violated public policy. The Union opposed the motion and moved to confirm the arbitrator's award.

{¶ 16} The trial court issued an opinion and order vacating the arbitration award. It found that the County waived any argument regarding its claim that it had exclusive authority to determine the appropriate discipline for Johnson's misconduct. The trial court nevertheless vacated the arbitration award on grounds that it violated public policy. The Union now appeals the trial court's judgment.

## II. Law and Analysis

## A. Standard of Review

{¶ 17} Ohio has a well-established public policy favoring arbitration and, consequently, courts have limited authority to vacate an arbitrator's award. *Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police*, 164 Ohio App.3d 408, 2005-Ohio-6225, 842 N.E.2d 588 (1st Dist.), ¶ 14; *Ohio Patrolmen's Benevolent Assn. v. Findlay*, 149 Ohio St.3d 718, 2017-Ohio-2804, 77 N.E.3d 969, ¶ 15.

{¶ 18} R.C. 2711.10 provides a limited set of circumstances under which the court may vacate an arbitrator's award, including awards procured by fraud or corruption, or if the arbitrator exceeded his authority in issuing the award. None of these circumstances are applicable here since the trial court vacated the arbitrator's award on grounds that it violated public policy. The Ohio Supreme Court has held that if the arbitrator's interpretation of a collective bargaining agreement violates an explicit public policy, the resulting award is unenforceable. *S.W. Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 112, 742 N.E.2d 630 (2001), citing *W.R. Grace & Co. v. Local 759, Internatl. Union of*

*Rubber, Cork, Linoleum & Plastic Workers of Am.,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983); *see also Cleveland v. Cleveland Police Patrolmen's Assn.*, 2016-Ohio-702, 47 N.E.3d 904 (8th Dist.).

{¶ 19} "[V]acating an arbitration agreement on public policy grounds is a narrow exception to the 'hands off' policy courts generally employ in reviewing arbitration awards and 'does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy.'" *S.W. Ohio Regional Transit Auth.* at 112, quoting *United Paperworkers Internatl. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43, 108 S. Ct. 364, 98 L.Ed.2d 286 (1987). To vacate an arbitration award on public policy grounds, the public policy must be "'well defined and dominant'" and must be "ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests." *S.W. Ohio Regional Transit Auth.* at 112, quoting *W.R. Grace & Co.* at 766. In determining whether to vacate an arbitration award on public policy grounds, a court may not second guess the arbitrator's findings of fact or otherwise question the arbitrator's reasoning. *Cleveland Police Patrolmen's Assn.* at ¶ 44. The inquiry is limited to determining whether the award violates an explicit, well-defined, and dominant public policy. *Id.*

{¶ 20} Whether an arbitrator's award violates public policy is a question of law subject to de novo review. *Akron Metro. Hous. Auth. v. Local 2517, AFSCME*, 161 Ohio App.3d 594, 2005-Ohio-2965, 831 N.E.2d 493, ¶ 7 (9th Dist.). De novo review requires an independent review of the case without any deference of the trial

court's judgment. *Torres v. Concrete Designs, Inc.*, 8th Dist. Cuyahoga Nos. 105833 and 106493, 2019-Ohio-1342, ¶ 48.

## B. Public Policy

{¶ 21} In the first assignment of error, the Union argues the trial court erred by vacating the arbitrator's award of suspension and reinstatement on grounds that it violated public policy. In the fourth assignment of error, the Union argues the trial court erred by failing to confirm the arbitration award and award back pay from the date Johnson was reinstated. We discuss these assigned errors together because they are interrelated.

{¶ 22} The Union argues the trial court erred in finding that the arbitrator's award violated public policy because Ohio has no "explicit, well-defined, and dominant" public policy. (Appellant's brief at 18.) However, R.C. 341.01 states, in relevant part:

> The sheriff shall have charge of the county jail and all persons confined therein. He shall keep such persons safely, attend to the jail, and govern and regulate the jail according to the minimum standards for jails in Ohio promulgated by the department of rehabilitation and correction.

The Ohio legislature, as "the ultimate arbiter of public policy," codified a common law duty to exercise ordinary care while maintaining custody of inmates under the Sheriff's control. *In re P.L.*, 8th Dist. Cuyahoga No. 108312, 2019-Ohio-4681, ¶ 78 (General Assembly is final arbiter of public policy.); *Jenkins v. Krieger*, 67 Ohio St.2d 314, 319, 423 N.E.2d 856 (1981) ("R.C. 341.01 is a codification of the common law duty of a sheriff to employ ordinary care in keeping the prisoners confided to his

custody and in protecting them from hazards that are, or should be, known to him."). The Sheriff's duty to keep inmates "safe" is specifically required by statute and is more than just a "general consideration[] of supposed public interests." *S.W. Ohio Regional Transit Auth.*, 91 Ohio St.3d at 112, 742 N.E.2d 630.

{¶ 23} The Union nevertheless argues there is nothing in the statute prohibiting reinstatement of employees found to have used excessive force. We agree. The inquiry is not whether Johnson's conduct itself violates public policy, but whether the arbitrator's decision will have the effect of violating public policy. In *S.W. Regional Transit Auth.*, the Ohio Supreme Court held that

> Ohio has no dominant and well-defined public policy that renders unlawful an arbitration award reinstating a safety-sensitive employee who was terminated for testing positive for a controlled substance, assuming that the award is otherwise reasonable in its terms for reinstatement.

*Id.* at 115. Although the use of excessive force violates Ohio's policy requiring the Sheriff to keep inmates safe, an arbitrator's decision to reinstate an employee who has used excessive force does not necessarily violate public policy if the arbitrator's decision is "otherwise reasonable in its terms for reinstatement." *Id.*

{¶ 24} We must, therefore, determine whether the arbitrator's award reinstating Johnson to his position as corrections officer corporal following an unpaid suspension violates public policy. "Absent an award that clearly violates a well-defined and dominant public policy, our review requires deference to upholding the arbitrator's decision." *Cuyahoga Metro. Hous. Auth. v. FOP Ohio Labor Council, Inc.*, 2018-Ohio-1079, 108 N.E.3d 1220, ¶ 37 (8th Dist.).

{¶ 25} The arbitrator found that Johnson was a long-time employee with 16 years of service marked by consistently favorable evaluations since the year 2000. The arbitrator also noted that in his last three performance evaluations, which were conducted by more than one evaluator, it was recommended that Johnson "would make a good Sergeant and/or should take the Sergeant's exam." (Arbitrator's decision at 22.) Thus, although Johnson demonstrated a lapse in judgment on a couple of occasions, these instances were rare in an otherwise exemplary record.

{¶ 26} The arbitrator also found nothing in the record suggesting that Johnson acted with malicious intent or that his decision to use force was premeditated. The arbitrator acknowledged that corrections officers work in a stressful environment and that they are frequently faced with the threat of bodily harm by inmates. They must, therefore, make split-second decisions for their safety as well as the safety of their coworkers and other inmates. And there was no evidence that Johnson lost control while using force in any of the incidents. Although Johnson told D.J. "I told you I'd get you," this incident was his fourth interaction with D.J. that day, and he previously warned her that if her unruly behavior continued, she was going to be pepper foamed.

{¶ 27} As previously stated, the arbitrator concluded that termination was an excessive penalty given the trying circumstances Johnson had to contend with and his 16-year history of positive performance evaluations. Yet, the arbitrator did not ignore the seriousness of Johnson's conduct. The arbitrator's award punished Johnson by imposing a lengthy suspension without back pay. Moreover, the

arbitrator's award promotes the public policy requiring the sheriff to keep inmates safe by requiring Johnson to undergo retraining on the use of force and on the management of mentally ill inmates. Therefore, the arbitrator's award is not contrary to public policy, and the trial court erred in failing to confirm the arbitrator's award.

{¶ 28} The first and fourth assignments of error are sustained.

### C. Safety Risk

{¶ 29} In the second assignment of error, the Union argues the trial court erred in making a de novo finding that Johnson was a "safety risk." We agree.

{¶ 30} In *S.W. Ohio Regional Transit Auth.*, 91 Ohio St.3d 108, 742 N.E.2d 630, the Ohio Supreme Court held that courts may not dispute the factual findings made by an arbitrator when reviewing the arbitrator's decision. The court explained:

> "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract."

*Id.* at 110, quoting *United Paperworkers Internatl. Union, AFL-CIO*, 484 U.S. 29, 37-38, 108 S. Ct. 364, 98 L.Ed.2d 286. In other words, a court may not second guess the arbitrator's findings of fact. *Cleveland Police Patrolmen's Assn.*, 2016-Ohio-702, 47 N.E.3d 904, at ¶ 44.

{¶ 31} As previously stated, the arbitrator considered Johnson's use of force in the context of his lengthy tenure at the jail and exemplary performance reviews. The arbitrator also explained that while the use of force was not excusable, it was understandable under the circumstances. Indeed, the arbitrator found that Johnson never lost control or acted out of malice. Thus, the arbitrator found that Johnson was not a safety risk and that suspension rather than termination was an appropriate penalty. The trial court's finding that Johnson was a "safety risk," violates the deferential standard of review applicable to arbitrator's factual findings.

{¶ 32} Therefore, the second assignment of error is sustained.

### D. Waiver

{¶ 33} In the third assignment of error, Johnson argues the trial court erred in holding that the County did not waive its claim that suspension and reinstatement violate public policy because the County failed to raise that issue during the arbitration proceedings.

{¶ 34} The failure to raise an issue or argument before a lower tribunal generally constitutes a waiver of the issue or argument on appeal. *See, e.g.*, *Fostoria v. Ohio Patrolmen's Benevolent Assn.*, 106 Ohio St.3d 194, 2005-Ohio-4558, 833 N.E.2d 720, ¶ 18 (Failure to raise issue before arbitrator waived city's right to object to the scope of arbitration.). However, the issue in this case is not whether Johnson's conduct or reinstatement, by itself, violates public policy; the issue is whether the arbitrator's decision violates public policy. The arbitrator's decision does more than simply reinstate Johnson to his former position; it requires that Johnson undergo

additional training designed to promote inmate safety. The County argued that reinstatement would jeopardize the safety of inmates, but could not have anticipated all aspects of the arbitrator's decision. Therefore, the issue of whether the arbitrator's decision violates public policy was not ripe until after he issued the decision, and the County did not waive the issue by failing to raise it during the arbitration proceedings.

{¶ 35} The fourth assignment of error is overruled.

{¶ 36} The trial court's judgment is reversed. We remand the case to the trial court to confirm the arbitration award and award back pay from the date Johnson was reinstated.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR