[Cite as *Cuyahoga Metro. Hous. Auth. v. Fraternal Order of Police Ohio Labor Council, Inc.*, 2018-Ohio-1079.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   105209

---

**CUYAHOGA METROPOLITAN HOUSING AUTHORITY**

PLAINTIFF-APPELLANT

vs.

**FRATERNAL ORDER OF POLICE OHIO
LABOR COUNCIL, INC.**

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-853632

**BEFORE:**   Keough, P.J., Kilbane, J., and McCormack, J.

**RELEASED AND JOURNALIZED:**   March 22, 2018

**ATTORNEYS FOR APPELLANT**

Adrian D. Thompson
Jennifer B. Orr
Taft Stettinius & Hollister, L.L.P.
200 Public Square, Ste. 3500
Cleveland, OH 44114


**ATTORNEY FOR APPELLEE**

Michael W. Piotrowski
2721 Manchester Road
Akron, OH 44319


KATHLEEN ANN KEOUGH, P.J.:

{¶1} Plaintiff-appellant, Cuyahoga Metropolitan Housing Authority ("CMHA"), appeals from the judgment of the Cuyahoga County Common Pleas Court that affirmed an arbitrator's award reinstating Detective Robert Wohlheter ("Wohlheter") after he was terminated by CMHA for his conduct in an incident involving a suspected drug transaction, and for his conduct during the subsequent investigation of the incident. For the reasons that follow, we affirm the trial court's decision.

### I. The December 3, 2013 Incident

{¶2} Wohlheter worked in the CMHA police department as a detective. On December 3, 2013, he and two other detectives, Robert Weis ("Weis") and Clinton Ovalle ("Ovalle"), were conducting "quality of life" patrols on Lakeview Estates, a CMHA property. As found by the arbitrator, the events leading to the instant grievance matter unfolded as follows.

{¶3} While patrolling the CMHA property, the three officers observed what appeared to be a drug transaction between a man and a woman, later identified as Thomas Moore ("Moore")

and Tamblyn Stanley ("Stanley"), respectively. The officers exited their vehicle to investigate the suspected drug transaction. Spotting the officers, Stanley began to walk away. Ovalle approached her while the other two officers approached Moore. While Ovalle searched Stanley, Weis and Wohlheter ordered Moore to the ground, handcuffed him, and conducted a pat-down search. They found a CMHA key in his possession but no drugs. Moore told the detectives the key belonged to his child's mother, who was a tenant in a CMHA apartment. The officers released Stanley, but decided to search the CMHA apartment for drugs. They placed Moore in the police vehicle and had him direct them to the apartment. As soon as they entered the apartment building, the officers detected the odor of marijuana and encountered another man who appeared to have been smoking marijuana. Ovalle stayed behind to investigate that man while Weis and Wohlheter continued to the apartment with Moore, who was still handcuffed.

{¶4} Det. Weis used the seized key to open the door of the apartment. While Weis stood by the doorway with Moore, Wohlheter entered the apartment. As Weis testified later, Wohlheter searched the apartment; specifically, he searched the kitchen, refrigerator, freezer, cupboard cabinets above the refrigerator, and two cereal boxes. No drugs were found, however. Ovalle then arrived and also entered the apartment. He talked to Wohlheter and decided that they could not legally search the apartment. The two then exited the apartment. According to Weis's testimony, Wohlheter was in the apartment for about ten minutes.

## II.    The Internal Investigation of the Incident

{¶5} Stanley subsequently filed a complaint alleging that Ovalle used excessive force when searching her.   Sergeants Gregory Drew ("Drew") and Paul Styles ("Styles") were assigned to investigate her complaint.   As part of that investigation, they interviewed the three officers, Stanley, and Moore.   The investigation revealed that the three detectives engaged in conduct that violated CMHA police department's policies and procedures.   Drew found Wohlheter not only participated in the unlawful arrest and transportation of Moore from one location to another, but also unlawfully searched the apartment and then provided an untruthful account of the events during the subsequent investigation of the matter.

{¶6} According to Drew, Wohlheter was deceptive and tried to cover up his actions during the investigation.   Wohlheter initially misled the investigation by claiming Moore was not handcuffed and opened the apartment door himself, although Wohlheter later admitted in the predisciplinary hearing that it was Weis who opened the door.   Wohlheter maintained he was in the apartment for only 10 to 12 seconds.   He also denied searching the kitchen.   These statements were directly inconsistent with both Weis's and Moore's accounts of the events, which indicated Moore was handcuffed the entire time and Wohlheter stayed in the apartment for about ten minutes and searched some items in the kitchen.

{¶7} After a predisciplinary review, CMHA terminated Wohlheter on April 24, 2014. CMHA cited Wohlheter's violation of CMHA's rules and regulations, violation of Moore's civil rights, illegal search of the apartment, and dishonest conduct during the investigation.   Ovalle was also terminated and Weis was given a 30-day suspension.[1]

---

[1]Ovalle's termination was modified by an arbitrator to a 30-day suspension with back pay.   The trial court confirmed the arbitrator's award, and this court affirmed.   *See Cuyahoga Metro. Hous. Auth. v. FOP, Ohio Labor Council, Inc.*, 8th Dist. Cuyahoga No. 104319, 2017-Ohio-190, *appeal not accepted*, 2017-Ohio-8136, 2017 Ohio

### III.   The Grievance and Arbitration

{¶8} On April 30, 2014, on behalf of Wohlheter, the Fraternal Order of Police, Ohio Labor Council, Inc. ("the union") filed a grievance procedure pursuant to the Collective Bargaining Agreement ("CBA").   The union contended the termination was without just cause. The grievance was denied.   The union then pursued arbitration on behalf of Wohlheter pursuant to the CBA.

{¶9} The arbitrator conducted a two-day hearing.   Before the arbitrator, the union argued that Wohlheter did not engage in any misconduct and he was not dishonest during the internal investigation.   The union also argued CMHA engaged in disparate treatment — punishing Wohlheter more severely than Weis, who was a more senior officer and only received a 30-day suspension as opposed to Wohlheter's termination, and that it did not have just cause to terminate Wohlheter.

{¶10} CMHA argued that Wohlheter was terminated for just cause — for the illegal arrest of Moore and illegal search of the apartment, and for his dishonesty during the investigation of the incident.   CMHA argued that it was not required to impose progressive discipline because of Wohlheter's dishonesty during the investigation.

### IV.   The Arbitrator's Decision

{¶11} On August 4, 2015, the arbitrator issued a decision reinstating Wohlheter, with a substantial suspension (nearly 16 months) and denial of back-pay.   The arbitrator found Wohlheter violated CMHA's rules and regulations in the prolonged detainment of Moore and the illegal search of the apartment.   The arbitrator also found Wohlheter engaged in acts of dishonesty.   But because of the difference in treatment of penalties between Wohlheter and

Weis, and because of the mitigating evidence in Wohlheter's favor, the arbitrator ultimately concluded that termination was "too severe" and "not reasonable under the just cause provision of the CBA."   The arbitrator reached this decision as follows.

{¶12} Here, the arbitrator acknowledged CMHA Police Chief Andres Gonzalez's emphasis on Weis's honesty and recognized that, despite an initial lack of candor during Drew's interview of him, Weis eventually provided a truthful and complete account of the unlawful detention of Moore and search of the apartment.   Weis's ultimate truthfulness enabled the CMHA police department in its investigation to ascertain the facts surrounding the incident. The arbitrator also noted Chief Gonzalez's emphasis on Weis's expression of remorse as an indication that he has learned a valuable lesson from the incident and could continue to be an asset to CMHA police department.   And the arbitrator acknowledged Weis's contrite attitude both later during the investigation and at the arbitration hearing.   But the arbitrator also remarked that, although eventually truthful, Weis initially attempted to hide the illegal detention and search as well, and he only became truthful when pressed further.   Ultimately, although finding that Wohlheter's conduct during the incident was more egregious than Weis's conduct, the arbitrator believed the difference in the conduct did not justify the "level of difference in the penalty."   The arbitrator acknowledged, however, that because Wohlheter's conduct was more severe, "a more severe penalty is justified."   After considering mitigating factors, such as Wohlheter's work record, service time, and the gravity of the offenses, the arbitrator decided Wohlheter's penalty for his conduct should be a substantial suspension without pay instead of termination.

{¶13} In reinstating Wohlhether, the arbitrator further acknowledged   concern over public policy but stated that "there is no evidence in the record which indicates that there is 'an

explicit, well-defined and dominant public policy' against the reinstatement of an officer who has engaged in the misconduct as outlined in the decision." *See* Arbitrator's Decision, page 29. Accordingly, the arbitrator ordered CMHA to modify the disciplinary action to a suspension from the date of termination to the date of reinstatement, without back pay or benefits.

## V. Trial Court's Decision

{¶14} CMHA filed a motion to vacate the arbitrator's award with the trial court. The trial court denied CMHA's motion, stating that the arbitrator's decision to reinstate Wohlheter drew its essence from the CBA and did not violate public policy.

{¶15} CMHA now appeals, raising as its sole assignment of error that the trial court erred by not vacating the report and award of the arbitrator pursuant to R.C. 2711.10(D) because the arbitration award is unlawful, arbitrary, and capricious and is against public policy.

## VI.  Standard and Review Under R.C. 2711.10

{¶16} "The public policy favoring arbitration requires that courts have only limited authority to vacate an arbitrator's award." *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland,* 99 Ohio St.3d 476, 2003-Ohio-4278, 793 N.E.2d 484, ¶ 13.

{¶17} Pursuant to R.C. 2711.10(D), the court of common pleas shall make an order vacating an arbitration award if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."   "Given the presumed validity of an arbitrator's award, a reviewing court's inquiry into whether the arbitrator exceeded his authority, within the meaning of R.C. 2711.10(D), is limited."   *Bd. of Edn. of Findlay City School Dist. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 551 N.E.2d 186 (1990), paragraph one of the syllabus.

**{¶18}** This court's review is similarly limited, confined to an evaluation of the trial court's order confirming, modifying, or vacating the arbitration award. *Cleveland v. Mun. Foremen & Laborers' Union, Local 1099*, 8th Dist. Cuyahoga No. 105035, 2017-Ohio-4188, ¶ 15. "The substantive merits of the original arbitration award are not reviewable on appeal absent evidence of material mistake or extensive impropriety." *N. Ohio Sewer Contrs., Inc. v. Bradley Dev. Co.*, 159 Ohio App.3d 794, 2005-Ohio-1014, 825 N.E.2d 650, ¶ 17 (8th Dist.).

**{¶19}** "Judicial review of labor arbitration awards is limited and courts must afford substantial deference to the arbitrator's decision." *Cuyahoga Metro. Hous. Auth. v. SEIU Local 47*, 8th Dist. Cuyahoga No. 88893, 2007-Ohio-4292, ¶ 11, citing *Painesville City Local Schools Bd. of Edn. v. Ohio Assn. of Pub. School Emps.*, 11th Dist. Lake No. 2005-L-100, 2006-Ohio-3645.

> The limited scope of judicial review of arbitration decisions comes from the fact that arbitration is a creature of contract. Contracting parties who agree to submit disputes to an arbitrator for final decision have chosen to bypass the normal litigation process. If parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceives factual or legal error in the decision), the parties have lost the benefit of their bargain. Arbitration, which is intended to avoid litigation, would instead merely become a system of "junior varsity trial courts" offering the losing party complete and vigorous *de novo* review.

(Emphasis sic.) *Motor Wheel Corp. v. Goodyear Tire & Rubber Co.*, 98 Ohio App.3d 45, 52, 647 N.E.2d 844 (8th Dist.1994).

**{¶20}** "An arbitrator derives his authority from the express terms of the collective-bargaining agreement between the parties." *Fostoria v. Ohio Patrolmen's Benevolent Assn.*, 106 Ohio St.3d 194, 2005-Ohio-4558, 833 N.E.2d 720, ¶ 11. "An arbitrator's award

draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 488 N.E.2d 872 (1986), paragraph one of the syllabus. "An arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME*, 59 Ohio St.3d 177, 179, 572 N.E.2d 71 (1991).

{¶21} "'Where an arbitrator's decision draws its essence from the collective bargaining agreement, and in the absence of language in the agreement that would restrict such review, the arbitrator, after determining that there was just cause to discipline an employee, *has the authority to review the appropriateness of the type of discipline imposed*.'" (Emphasis added) *Ohio Patrolmen's Benevolent Assn. v. Findlay*, 149 Ohio St.3d 718, 2017-Ohio-2804, 77 N.E.3d 969, ¶ 17, quoting *Bd. of Trustees of Miami Twp. v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 81 Ohio St.3d 269, 690 N.E.2d 1262 (1998), syllabus.

{¶22} "Once it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award pursuant to R.C. 2711.10(D) is at an end." *Findlay Edn. Assn.*, 49 Ohio St.3d at paragraph two of the syllabus, 551 N.E.2d 186.

{¶23} In this case, the arbitration award drew its essence from the terms of the CBA because it was based on Wohlheter's contractual right that any disciplinary action taken by CMHA will only be for "just cause." A "just cause" inquiry requires the arbitrator to make two

determinations: (1) whether a cause for discipline exists, and (2) whether the amount of discipline was proper under the circumstances. *Bd. of Trustees of Miami Twp.*, 81 Ohio St.3d at 271-272, 690 N.E.2d 1262. The arbitrator found that a just cause for discipline existed. The more difficult question for the arbitrator in this dispute was whether CMHA had just cause to terminate Wohlheter.

{¶24} While recognizing and appreciating CMHA's concern for the trustworthiness of its officers, the arbitrator considered disparate treatment of Weis and Wohlheter, as well as mitigating factors such as Wohlheter's five years of service with acceptable performance, his lack of prior disciplinary action, and an absence of indication that Wohlheter cannot be rehabilitated to perform his duties as an officer. Where just cause is not defined in the CBA, as here, the arbitrator appropriately considered mitigating circumstances as part of the just cause analysis. *Cleveland v. Cleveland Police Patrolmen's Assn.*, 2016-Ohio-702, 47 N.E.3d 904, ¶ 34 (8th Dist.). The arbitrator decided termination was disparate, too severe under the circumstances, and violated the just cause provision of the CBA. The arbitrator decided a substantial disciplinary action would have been sufficient to address Wohlheter's misconduct.

{¶25} As properly noted by the trial court, the arbitrator's consideration of mitigating factors was not in conflict with any express terms of the controlling CBA, and the consideration was part of the just-cause analysis when determining the appropriateness of termination as discipline for Wohlheter's misconduct. The trial court recognized that the arbitrator, after determining there was just cause to discipline Wohlheter, had authority to review the appropriateness of the disciplinary action and to fashion a remedy. Accordingly, the arbitration award drew its essence from the agreement and was not unlawful, arbitrary, or capricious.

## VII. The Award Does Not Violate Public Policy

**{¶26}** Although we have determined the arbitration award here drew its essence from the CBA and was not unlawful, arbitrary, or capricious, CMHA contends that the arbitration award is unenforceable because reinstating Wohlheter violates public policy.

**{¶27}** To vacate an award on public policy grounds, it is not Wohlheter's conduct that must be shown to have violated public policy, but rather, CMHA must establish that the arbitrator's award that significantly sanctioned Wohlheter (but reinstated him) violated a well-defined and dominant public policy. *See S.W. Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 742 N.E.2d 630 (2001); *W.R. Grace & Co. v. Local Union 759, Internatl. Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983).

**{¶28}** In this case, the arbitrator acknowledged that a claim of dishonesty against a police officer was very stigmatizing and found that Wohlheter was dishonest during the investigation. Nevertheless, the arbitrator stated that there was no well-defined and dominant public policy against reinstating an officer such as Wohlheter for the engaged misconduct.

**{¶29}** The Ohio Supreme Court has recognized if an arbitrator's interpretation of a CBA violates public policy, the resulting award is unenforceable. *S.W. Ohio Regional Transit Auth.*, at 112*, citing *W.R. Grace* at 766. *W.R. Grace & Co. v. Local Union 759, Internatl. Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983).

**{¶30}** However, "vacating an arbitration award pursuant to public policy is a narrow exception to the 'hands off' policy that courts employ in reviewing arbitration awards and 'does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy.'" *S.W. Ohio Regional Transit Auth.*, at *id.*, quoting *United Paperworkers Internatl.*

*Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The public policy "must be well defined and dominant, and is to be ascertained by 'reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *W.R. Grace* at *id.*, quoting *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct 442, 89 L.Ed. 744 (1945). Moreover, the public policy must be "explicit." *E. Associated Coal Corp. v. United Mine Workers of Am.,* 531 U.S. 57, 67, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000), quoting *W.R. Grace* at 766.

{¶31} Accordingly, our analysis begins with an examination of the "laws and legal precedents" to determine whether the reinstatement of Wohlheter under the collective bargaining agreement violates an explicit, well defined, and dominant public policy.

{¶32} This court finds no law prohibiting the reinstatement of a police officer for making dishonest statements during an internal investigation. Nor does CMHA or the dissent cite to any. Instead, CMHA cites to dicta and otherwise distinguishable case law to advocate for a bright-line rule that would prevent retention or reinstatement of any police officer found to be "dishonest." As discussed more fully below, the cases CMHA relies upon are distinguishable and do not justify vacating the arbitrator's award in this case.

{¶33} Initially, we note that dishonest acts by a police officer that render an arbitration award unenforceable are not well-defined under Ohio law. While the Fourth Appellate District in *Ironton v. Rist*, 4th Dist. Lawrence No. 10CA10-2010-Ohio-5292, held that a "dominant well-defined public policy" exists that prohibits the reinstatement of a police officer who falsifies a traffic ticket, we do not find this precedent prohibits reinstatement related to any or all acts of dishonesty. In *Rist*, the court's holding is rooted in its finding that, aside from the officer committing a  criminal act of falsification, the officer also violated R.C. 737.11, which

expressly provides that "the police force shall * ** obey and enforce * * * all criminal laws of the state and the United States." Wohlheter, however, was not terminated for falsifying a police report and therefore the public policy recognized in *Rist* does not preclude his reinstatement in this case.

**{¶34}** Contrary to the dissent's suggestion, *Rist* does not stand for the proposition that Ohio has a well defined and dominant public policy against a contractual agreement to severely punish yet reinstate a police officer who engages in any acts of dishonesty in his or her official capacity. Such a broad reading of *Rist* directly contravenes the Ohio Supreme Court and the United States Supreme Court's admonitions. Indeed, we are constrained to uphold the arbitrator's decision unless the arbitrator's interpretation of the collective bargaining agreement violates some explicit, well defined, and dominant public policy. Extending *Rist* beyond its holding for a blanket proposition ignores our limited review and dangerously transforms a narrow exception into a broad authority for courts to severely undermine the purpose of a collective bargaining agreement.

**{¶35}** As stated previously, in resolving CMHA's arguments, our inquiry is not whether Wohlheter's conduct itself violates public policy, but whether the arbitrator's decision to reinstate him did so. *Dayton v. AFSCME, Ohio Council 8*, 2d Dist. Montgomery No. 21092, 2005-Ohio-6392, ¶ 23, citing *S.W. Ohio Regional Transit Auth.* at 112-113, 742 N.E.2d 630; *see also Cleveland v. Cleveland Police Patrolmen's Assn.*, 2016-Ohio-702, 47 N.E.3d 904, ¶ 44 (8th Dist.); *Fraternal Order of Police, Lodge 8 v. Cleveland*, 8th Dist. Cuyahoga No. 102565, 2015-Ohio-4188, ¶ 44.

**{¶36}** In *S.W. Ohio Regional Transit Auth.*, the regional transit authority argued that it was against public policy to reinstate a safety-sensitive employee who was terminated for testing

positive for a controlled substance. Despite recognizing Ohio and federal laws that require drug testing and prohibit the use of controlled substances by transportation employees, the Supreme Court held that "Ohio has no dominant and well-defined public policy that renders unlawful an arbitration award reinstating a safety-sensitive employee who was terminated for testing positive for a controlled substance, assuming that the award is otherwise reasonable in its terms for reinstatement." *Id.* at 115. Thus, recognizing that an officer's dishonest conduct itself violates public policy is not sufficient to render an arbitration award unenforceable in the absence of a well-defined and dominant public policy against the reinstatement of the officer under the CBA.

{¶37} Our inquiry therefore requires deciding whether the arbitrator's award ordering Wohlheater's reinstatement with nearly a 17-month suspension without back pay (after finding him to be untruthful during an internal investigation) violates public policy. And, absent an award that clearly violates a well-defined and dominant public policy, our review requires deference to upholding the arbitrator's decision. We find that the cases relied on by CMHA do not evidence a well-defined and dominant public policy that renders unlawful an otherwise reasonable arbitration award reinstating Wohlheater for his dishonest conduct. While these cases may recognize that Wohlheater's conduct violates general principles of public policy, they fail to establish a well-defined and dominant public policy prohibiting his reinstatement under the factual circumstances of this case.

{¶38} For example, aside from *Rist*, CMHA relies on the Ohio Supreme Court's decisions in *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, and *Jones v. Franklin Cty. Sheriff*, as legal precedent of a well-defined public policy that police officers are held to a higher standard of conduct than the general public. Although we do not dispute this point, we cannot agree that these cases embody a well-defined public policy against suspending

rather than terminating a police officer for dishonest conduct pursuant to a CBA, overcoming the high hurdle to vacate an arbitration award. As this court has previously stated,

> [N]either *Jones* nor [*Rist*] supports the proposition that a city must be permitted, as a matter of public policy, to dismiss a police officer, or that an arbitrator must be prohibited from using broad, discretionary authority to modify a disciplinary sanction of dismissal under a collective bargaining agreement, whenever a city concludes that an officer's conduct falls below the "higher standard of conduct" to which police officers are held and "diminishe[s] the esteem" of the police department and its personnel.

*Cleveland v. Cleveland Police Patrolmen's Assn.*, 8th Dist. Cuyahoga No. 103010, 2016-Ohio-702, 47 N.E.3d 904, ¶ 49, *appeal not allowed*, 146 Ohio St.3d 1430, 2016-Ohio-4606, 52 N.E.3d 1204.

{¶39} Ohio courts have consistently recognized that "'public policy does not demand that a city have unbridled authority to terminate its employees for their misconduct.'" *Wright State Univ. v. FOP*, 2d Dist. Greene No. 2016-CA-35, 2017-Ohio-854, quoting *Dayton v. FOP, Captain John C. Post Lodge No. 44*, 2d Dist. Montgomery No. 18158, 2000 Ohio App. LEXIS 2313, *14 (June 2, 2000). Indeed, the public policy that police officers are held to a higher standard still allows an arbitrator to use broad, discretionary authority to review the facts surrounding the discipline and the mitigating factors presented, and determine whether the discipline imposed should be upheld, overturned, or modified. *Dayton* at *id*.

{¶40} Likewise, we find CMHA's reliance on *Cuyahoga Metro. Hous. Auth. v. FOP, Ohio Labor Council, Inc.*, 8th Dist. Cuyahoga No. 104319, 2017-Ohio-190, as legal precedent evidencing a well-defined and dominant public policy against reinstating an officer for dishonest conduct to be misplaced. In *Cuyahoga Metro. Hous. Auth.*, this court upheld the arbitrator's decision and found the award enforceable. This court therefore did not adopt, let alone apply, this public policy standard. To the extent that the opinion notes that *Rist* is "representative of a

line of cases demonstrating a strong public policy" against the retention of police officers "who engage in acts of dishonest in their official capacity," this statement is dicta and does not create a well-defined and dominant public policy. Id. at ¶ 13. This is particularly true where the court did not address or analyze any alleged dishonesty by the police officer. Thus, it would be improper for us to convert mere dicta into binding precedent. *See Morris v. State*, 8th Dist. Cuyahoga No. 80839, 2002-Ohio-5975 (recognizing that dicta is not binding in subsequent cases as legal precedent).

{¶41} Notably, the Second Appellate District recently addressed a case nearly analogous to the instant case and rejected the appellant's claim that Ohio has a well-defined and dominant public policy against reinstating police officers for dishonest conduct, despite the claim that police officers are held to a higher standard. *Wright State Univ. v. FOP*, 2d Dist. Greene No. 2016-CA-35, 2017-Ohio-854. In *FOP*, the arbitrator reinstated a police officer who made dishonest statements to his lieutenant about a coworker's absence. While the court recognized that officer honesty and integrity are vital and did not condone the officer's actions, it nonetheless held: "we cannot find, any public policy that renders unlawful an arbitration award reinstating an officer in this type of situation." *Id.* at ¶ 36. Thus, unlike *Cuyahoga Metro. Hous. Auth.* — which referenced the public policy question in dicta — the issue of any public policy that renders unlawful an arbitration award reinstating an officer for making a dishonest statement was actually decided and rejected in *FOP*. We find this authority applicable and persuasive.

{¶42} In this case, the arbitrator considered Wohlheter's five years of service with acceptable performance, his lack of prior disciplinary action, and an absence of any indication that Wohlheter cannot be rehabilitated to perform his duties as an officer. But the arbitrator did

not excuse or turn a blind eye to Wohlheter's dishonesty during the investigation. The arbitrator's award punished Wohlheter by imposing a substantial suspension (from the date of termination to the date of reinstatement) without back pay and benefits. This award is not contrary to any explicit or well-defined public policy, and follows the arbitrator's broad, discretionary authority to modify a disciplinary sanction of dismissal under the CBA.

{¶43} Although a police officer's dishonesty during an internal investigation may violate an ethical duty, and is against the public interest of police officers being honest, suspending rather than terminating an officer who is dishonest does not necessarily violate an explicit public policy. This court does not condone Wohlheter's or any officer's dishonesty, and this case does not stand for the proposition that dishonesty will never require termination. As the Ohio Supreme Court stated, "an employee's overall disciplinary record, the egregiousness of the infraction, problems with recidivism, or other issues could constitute sufficient causes for discharge. Of course, these are matters that are contingent upon the terms of the CBA, as well as the arbitrator's interpretation of those terms." *S.W. Ohio Regional Transit Auth.* at 115.

{¶44} Accordingly, the arbitration award modifying Wohlheter's termination to a substantial suspension, without back pay and benefits, is not against public policy and is in line with the progressive disciplinary procedures set forth in the CBA and CMHA Personnel Policies and Procedures Manual. The trial court acknowledged as such by concluding:

> The arbitrator is not prohibited from using his broad, discretionary authority to modify a disciplinary sanction of dismissal under a collective bargaining agreement even though [the arbitrator] concluded that the conduct fell below the higher standard of conduct to which police officers are held. As such, this court finds that the arbitrator's decision to reinstate did not violate public policy.

## VIII. Conclusion

**{¶45}** Accordingly, the arbitration award in this case drew its essence from the CBA, was not unlawful, arbitrary, or capricious, and is not against public policy. The assignment of error is overruled.

**{¶46}** Judgment affirmed.

It is ordered that appellee recover of said appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MARY EILEEN KILBANE, J., CONCURS;
TIM McCORMACK, J., DISSENTS WITH SEPARATE OPINION


TIM McCORMACK, J., DISSENTING:

**{¶47}** I agree with the majority that the arbitrator had broad authority to fashion a remedy. That authority, though, is not limitless. I agree with CMHA that this arbitration award is unenforceable. This particular award violates public policy. It contravenes Ohio law. Accordingly, I respectfully dissent.

**{¶48}** I agree with the majority that the public policy exception to our review of arbitration awards is narrow. I fully disagree with the majority's application of the exception in this case.

**{¶49}** Here, the arbitrator acknowledged that a claim of dishonesty against a police officer was very stigmatizing and, therefore, CMHA must demonstrate by clear and convincing evidence that Wohlheter was dishonest. Applying that standard, the arbitrator found that Wohlheter committed dishonest conduct. The arbitrator's decision stated, in part:

> The evidence demonstrates that CMHA had sufficient evidence before it to determine that the Grievant gave misleading statements during the investigation of the incident. Even if the Grievant could have been mistaken about who opened the door to the apartment, the evidence obtained through the investigation revealed that the Grievant searched the apartment. The Grievant maintained that he did not search the apartment. Moreover, the Grievant said they were in the apartment 10-12 seconds. This is much different than the 10 minutes revealed during the investigation, and is clearly not the result of a mistake. Moreover the Grievant stated that all three officers dealt with Antonio Shanklin and the marijuana and then went to the apartment together. It was revealed that this was not true. The evidence reveals that Detective Ovalle stayed and dealt with Mr. Shanklin while the Grievant, Detective Weis and Moore went upstairs to the apartment. It is not likely that this was a mistake on the Grievant's part. The Grievant should recall if he dealt with Mr. Shanklin; this is not a minor detail, it's hard to believe that the Grievant would be mistaken about that. Therefore, CMHA provided clear and convincing evidence that the Grievant was not truthful during the investigation.

> The evidence establishes that the Authority provided clear and convincing evidence that the grievant engaged in misconduct and violated several of CMHA's rules and regulations. The Authority provided evidence that the Grievant participated in the unnecessary prolonged detainment of Moore, the illegal search of Terracia Goin's apartment and the Authority provided sufficient evidence that Grievant was dishonest during the investigation.

**{¶50}** To determine whether there is a well-defined and dominant public policy prohibiting the reinstatement of a police officer who commits acts of dishonesty, we are to examine and seek guidance from "laws and legal precedents." *S.W. Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d at 112, 2001-Ohio-294, 742 N.E.2d 630.

**{¶51}** R.C. 737.11, which outlines the general duties of police officers and firefighters, provides that "[t]he police force of a municipal corporation shall preserve the peace, protect

persons and property, and obey and enforce all ordinances of the legislative authority of the municipal corporation, [and] all criminal laws of the states and the United States." In fulfilling these obligations, "honesty is vital to the effective performance of these duties and to ensuring public trust and confidence in the police force." *Ironton v. Rist*, 4th Dist. Lawrence No. 10CA10, 2010-Ohio-5292, ¶ 20, citing *Brink v. Wadsworth*, 9th Dist. Medina No. 1728, 1988 Ohio App. LEXIS 4972, 4 (Dec. 14, 1988) (the need to ensure the public trust and confidence in the police is vital) and *Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police*, 1st Dist. Hamilton No. C-040454, 2005-Ohio-1560, ¶ 21-22 (it is the general public policy that law enforcement officers must not lie and honesty is expected of all law enforcement officers).

{¶52} In *Rist*, a police officer falsified a traffic ticket and was terminated. The arbitrator reinstated the officer. The Fourth District found the arbitration award unenforceable, concluding that Ohio has "a dominant, well-defined public policy against the reinstatement of an officer who falsifies a police report." *Id*. at ¶ 20. The Fourth District relied on both R.C. 737.11 and Ohio case law in reaching this conclusion. The court first noted the obligations of a police force in R.C. 737.11 quoted above. The court went on to reference Ohio case law recognizing the vital role that honesty plays in police work and cited the supporting case law from other Ohio districts cited above. Further, the court quoted the following passage from a decision by the Supreme Court of Ohio:

> "[I]t is settled public policy * * * that police officers are held to a higher standard of conduct than the general public. * * * Law enforcement officials carry upon their shoulders the cloak of authority of the state. For them to command the respect of the public, it is necessary then for these officers even when off duty to comport themselves in a manner that brings credit, not disrespect, upon their department."

(Citations omitted.) *Rist* at ¶ 20, quoting *Jones v. Franklin Cty. Sheriff*, 52 Ohio St.3d 40, 43, 555 N.E.2d 940 (1990).

{¶53} Based on these laws and legal precedents, the Fourth District held that Ohio has a well-defined and dominant public policy against the reinstatement of an officer who falsified a police report. The Fourth District's decision was left standing by the Supreme Court of Ohio.

{¶54} *Rist* was cited with approval by the Supreme Court of Ohio in a recent decision, *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368. In *Mole*, the Supreme Court stated that "the interest in holding peace officers to a higher standard is embedded in Ohio law" and "the need to maintain the efficiency and honesty of law enforcement serving the community is widely recognized." *Id*. at ¶ 48. As described by the Supreme Court of Ohio, the Fourth District in *Rist* struck down the reinstatement of an officer who falsified a traffic ticket as "violating well-defined public policy favoring honest police force that commands the public trust." *Id*.

{¶55} Respectfully, the majority's narrative offered in an effort to distinguish this case from *Rist,* 4th Dist. Lawrence No. 10CA10, 2010-Ohio-5292*,* and *Jones,* 52 Ohio St.3d 40, 43, 555 N.E.2d 940, is not persuasive. The majority asserts an inappropriately narrow interpretation of the public policy prohibition in *Rist*, finding that prohibiting the reinstatement of a police officer who falsifies a traffic ticket does not prohibit reinstatement related to any or all acts of dishonesty. The majority then concludes that because Wohlheter was not terminated for falsifying a police report, the public policy in *Rist* does not preclude his reinstatement.

{¶56} We note first that, although the facts in *Rist* involved the falsification of a traffic ticket, the court found that Ohio has a well-defined and dominant public policy expressly prohibiting the reinstatement of an officer who falsifies a report. While the prohibition is certainly more than a "general consideration of supposed public interest," it is clearly not limited to falsifying traffic tickets. *W.R. Grace & Co. v. Local Union 759, Internatl. Union of the*

*United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983).

{¶57} Further, while the court's holding in *Rist* was undoubtedly bolstered by the fact that falsification is a criminal act, its public policy holding was ultimately rooted in the notion that "honesty is vital to the effective performance of [police] duties and to ensuring public trust and confidence in the police force." *Rist* at ¶ 20. In light of this reasoning, I find the reinstatement of an officer who first violated department policy and Ohio laws of search and seizure and subsequently made repeated false statements and provided a knowingly untruthful account of those events during an official investigation to be equally violative of the public policy against reinstatement of dishonest officers.

{¶58} This position is further supported by the unique circumstances of the facts underlying the investigation in this case as articulated by CMHA Police Chief Andres Gonzalez. Gonzalez testified at length before the arbitrator and explained that, as a CMHA officer, Wohlheter was tasked with serving an economically disadvantaged community that has historically had a high level of distrust of the police. He went on to explain that CMHA police officers are unique in that they encounter the same residents and their families frequently and, therefore, earning the community's trust is of utmost importance in the officers' ability to carry out their duties. In light of this context, an officer making false statements during an investigation into his own commission of an unnecessary prolonged detainment and illegal search is just as detrimental, if not more so, to a police force's ability to effectively carry out its duties under R.C. 737.11 as falsifying a traffic ticket.

{¶59} Like Wohlheter, Det. Ovalle also filed a grievance regarding his termination and the matter proceeded to arbitration as well. Contrasting the roles of the two CMHA officers, the

arbitrator reinstated Det. Ovalle, finding that Det. Ovalle did not participate in the illegal search of the apartment and that Tamblyn Stanley's account of excessive use of force was not credible. More importantly, the arbitrator found that Det. Ovalle did *not* engage in dishonest conduct during the investigation of the incident. Consequently, the arbitrator reinstated Det. Ovalle and imposed a 30-day suspension instead. This court affirmed the trial court's decision that affirmed the arbitration award. *Cuyahoga Metro. Hous. Auth. v. FOP, Labor Council, Inc.*, 8th Dist. Cuyahoga No. 104319, 2017-Ohio-190. In affirming the trial court's judgment denying CMHA's motion to vacate the arbitration award, this court reasoned as follows:

> CMHA raised issues of dishonesty throughout the arbitration proceedings and the arbitrator addressed these allegations specifically. *The arbitrator found that Detective Ovalle did not engage in dishonest conduct.* The portion of the arbitration award detailing the arbitrator's findings that Detective Ovalle did not engage in conduct that would constitute dishonesty is lengthy and thorough. CMHA attempted to show that Detective Ovalle lied during interviews he gave regarding the Stanley and Moore incidents. *The arbitrator found that Detective Ovalle was not dishonest*, and that his version of events was more credible than Stanley's. The arbitrator found that Stanley's allegations against Detective Ovalle changed over time. She initially reported that Detective Ovalle swept her legs out from under her, causing her to fall. She later said Detective Ovalle pushed her down to the ground. The arbitrator noted that Detective Ovalle's description of his interaction with Stanley was consistent. The arbitrator found that Detective Ovalle was more credible. Credibility determinations are primarily for the factfinder to make. This court cannot review the merits of the factual determinations made by the arbitrator. *Cleveland Police Patrolmen's Assn. v. Cleveland*, 107 Ohio App.3d 248, 257, 668 N.E.2d 548 (8th Dist. 1995). Further, Moore's version of events fit more closely with Detective Ovalle's statements and testimony than Stanley's.

(Emphasis added.) *Cuyahoga Metro. Hous. Auth.* at ¶ 14.

**{¶60}** Although the court was constrained by its inability to review the factual determinations made by the arbitrator, it nevertheless quoted the public policy enunciated by the Supreme Court in *Jones* and noted that in identifying "a strong, well-recognized public policy * * * that precluded the reinstatement of officers who falsified reports," *Rist* was "representative of a

line of cases demonstrating a strong public policy against the retention of individuals as police officers who engage in acts of dishonesty in their official capacity." *Id*. at ¶ 13.

{¶61} The majority in this case concludes that because the court in *Cuyahoga Metro. Hous. Auth.* did not address or analyze any alleged dishonesty by Det. Ovalle, it did not adopt or apply the relevant public policy. This conclusion is problematic. The court did not affirm the arbitrator's award because it did not find a well-defined and dominant public policy prohibiting the reinstatement of officers who commit acts of dishonesty in their official capacity. On the contrary, the court affirmed the arbitrator's award, at least in part, because Det. Ovalle had not committed acts of dishonesty that would have made the arbitrator's award violate public policy.

{¶62} In contrast to the arbitrator's finding regarding Det. Ovalle, the arbitrator in the instant case found Wohlheter to have engaged in repeated acts of dishonesty yet reinstated him. This writer acknowledges that the narrow public policy exception does not provide a broad judicial power to set aside arbitration awards as against public policy. The facts of this case are certainly sufficiently compelling to vacate the arbitrator's award reinstating Wohlheter. The continued employment of any such officer only serves to erode fragile public trust and confidence in the law enforcement officers, who are entrusted to the unique front line position of public trust. Ohio's courts have stressed the importance of maintaining the public's confidence by ensuring the integrity of law enforcement officers. Examining the laws and legal precedents, it is found that Ohio has a well-defined and dominant public policy favoring an honest police force made up of officers who command the public trust, and laws and court precedents against the reinstatement of a police officer who has committed acts of dishonesty in his official capacity.

{¶63} I agree with the majority's determination that the arbitrator here had the authority to act. No arbitrator possesses unlimited authority to exceed clearly established public policy. This award is contrary to public policy. It should not be enforced. For that reason, I would reverse the trial court's judgment denying CMHA's motion to vacate the arbitration award reinstating Wohlheter.