[Cite as *State v. Peak*, 2024-Ohio-735.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 112842 |
| v. | : | |
| JEREMIAH PEAK, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 29, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-669685-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Mason McCarthy, Assistant Prosecuting
Attorney, *for appellee.*

Gregory T. Stralka, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Jeremiah Peak ("Peak"), appeals the denial of his requests for reverse bindover and to withdraw his guilty plea. He claims the following errors:

1. Appellant's sentence should be stayed and the matter transferred to juvenile court for an amenability hearing under Ohio Revised Code Section 2152.121.

2. The trial court's denial of the appellant's motion to withdraw his plea created a manifest injustice.

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Peak was charged in the Cuyahoga County Court of Common Pleas, Juvenile Division, with multiple offenses in two separate cases. In Cuyahoga C.P. No. CR-22-668914-A, Peak was charged with one count of aggravated robbery in violation of R.C. 2911.01(A)(1); three counts of robbery in violation of R.C. 2911.02(A)(1), 2911.02(A)(2), and 2911.02(A)(3); one count of having weapons while under disability in violation of R.C. 2923.13(A)(2); one count of grand theft in violation of R.C. 2913.02(A)(1); one count of receiving stolen property in violation of R.C. 2913.02(A); two count of improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16(B); and two counts of theft in violation of R.C. 2913.02(A)(1). Counts 1-4, 6, 7, and 10, included firearm specifications.

{¶ 4} In Cuyahoga C.P. No. CR-22-669685-A, Peak was charged with attempted murder in violation of R.C. 2923.02 and 2903.02(A); two counts of felonious assault in violation of R.C. 2903.11(A)(2); two counts of aggravated menacing in violation of R.C. 2903.21(A); and one count of having weapons while under disability in violation of R.C. 2923.21(A). Counts 1 and 3 included firearm specifications.

{¶ 5} The state filed motions asking the juvenile court to relinquish jurisdiction and bind the cases over to the general division pursuant to the mandatory transfer provision set forth in R.C. 2152.10(B). Following a hearing on the motions, the juvenile court granted the motions and transferred the cases. In the general division, the state reindicted Peak in a single indictment with the charges previously alleged in the two juvenile court cases. Among the 17 charges listed in the indictment, Count 7 alleged aggravated robbery in violation of R.C. 2911.01(A)(1). This count alleged that Peak

> did, in attempting or committing a theft offense, as defined in section 2913.01 and 2913.02 of the Revised Code, or in fleeing immediately after the attempt or offense upon [the victim] did have a deadly weapon, to wit: firearm, on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it.

The count also contained one- and three-year firearm specifications pursuant to R.C. 2941.141(A) and 2941.145(A).

{¶ 6} Peak subsequently pleaded guilty to an amended indictment in Cuyahoga C.P. No. CR-22-669685-A, consisting of one count of felonious assault in violation of R.C. 2903.11(A)(2); one count of a having weapons while under disability in violation of R.C. 2923.13(A)(2); one count of aggravated robbery in violation of R.C. 2911.01(A)(1); one count of grand theft in violation of R.C. 2913.02(A)(1); and one count of aggravated theft in violation of R.C. 2913.02(A)(1). In amending the indictment, the three-year firearm specification attendant to the aggravated robbery charge was deleted but the one-year firearm specification

remained. The court sentenced Peak to an aggregate eight-year prison term and up to five years of postrelease control.

{¶ 7} After the court imposed the sentence, Peak made an oral motion to stay the sentence and asked the court to transfer the case back to the juvenile court for an amenability hearing. The state objected, arguing that because Peak pleaded guilty to an offense that would be subject to mandatory bindover, he was not entitled to reverse bindover. Defense counsel argued that reverse bindover was proper because Peak was only subject to mandatory bindover if he pleaded guilty to a three-year firearm specification and the three-year firearm specification had been deleted. The trial court stayed the sentence and asked the parties to brief the issue. After the briefs were submitted and the court heard oral arguments on the issue, the court denied Peak's motion for reverse bindover.

{¶ 8} Approximately two weeks later, Peak filed a post-sentence motion to withdraw his guilty plea, claiming he believed he would be subject to reverse bindover after pleading guilty. The state opposed the motion, which was ultimately denied. Peak now appeals the denial of his requests for reverse bindover and to withdraw his guilty pleas.

## II. Law and Analysis

### A. Reverse Bindover

{¶ 9} In the first assignment of error, Peak argues the trial court erred in denying his request for reverse bindover. He argues we should follow *State v. Townsend*, 8th Dist. Cuyahoga No. 111548, 2023-Ohio-1968, reverse the trial court's

judgment, and remand the case to the trial court with instructions to issue a reverse bindover.

{¶ 10} In *Townsend*, a juvenile defendant had been bound over to the general division of the common pleas court and pleaded guilty to involuntary manslaughter with a three-year firearm specification. In describing his sentence, the court noted that the parties had agreed to a six-year prison term and "stipulated that Townsend was not amenable to the juvenile system, preventing a reverse bindover." *Id.* at ¶ 7.

{¶ 11} However, Townsend did not raise the issue of reverse bindover in the appeal; he only challenged the portion of his sentence requiring him to pay $5,000 in restitution. Indeed, the *Townsend* Court did not address the merits of any argument for or against reverse bindover in that case. Therefore, the court's observation regarding Townsend's ineligibility for reverse bindover is dicta and has no bearing on subsequent cases as legal precedent. *State v. West*, 12th Dist. Madison No. CA2021-07-012, 2022-Ohio-2095, ¶ 13, fn. 3 ("Expressions in an opinion that go beyond the facts necessary is considered dicta and is not binding in subsequent cases as legal precedent."); *Cuyahoga Metro. Hous. Auth. v. FOP Ohio Labor Council, Inc.*, 2018-Ohio-1079, 108 N.E.3d 1220, ¶ 40 (8th Dist.) ("[I]t would be improper for us to convert mere dicta into binding precedent.").

{¶ 12} Reverse bindovers occur in cases where juveniles who were transferred to adult court are subsequently convicted of, or pleaded guilty to, offenses that would not have qualified for mandatory or discretionary transfer to

adult court in the first instance.  The process of reverse bindover is governed by R.C.

2152.121, which states, in relevant part:

(B) If a complaint is filed against a child alleging that the child is a delinquent child, if the case is transferred pursuant to division (A)(1)(a)(i) or (A)(1)(b)(ii) of section 2152.12 of the Revised Code, and if the child subsequently is convicted of or pleads guilty to one or more offenses in that case, the sentence to be imposed or disposition to be made of the child with respect to each of the offenses shall be determined as follows:

(1) The court in which the child is convicted of or pleads guilty to the offenses shall determine whether, had a complaint been filed in juvenile court alleging that the child was a delinquent child for committing an act that would be any of the offenses if committed by an adult, division (A) of section 2152.12 of the Revised Code would have required mandatory transfer of the case or division (B) of that section would have allowed discretionary transfer of the case.  The court shall not consider the factor specified in division (B)(3) of section 2152.12 of the Revised Code in making its determination under this division.

* * *

(3) If the court in which the child is convicted of or pleads guilty to the offenses determines under division (B)(1) of this section that, had a complaint been filed in juvenile court alleging that the child was a delinquent child for committing an act that would be any of the offenses if committed by an adult, division (A) of section 2152.12 of the Revised Code would not have required mandatory transfer of the case but division (B) of that section would have allowed discretionary transfer of the case, the court shall determine the sentence it believes should be imposed on the child under Chapter 2929. of the Revised Code for each of the offenses, shall impose that sentence on the child, and shall stay that sentence pending completion of the procedures specified in this division. Upon imposition and staying of the sentence, the court shall transfer jurisdiction of the case back to the juvenile court that initially transferred the case and the juvenile court shall proceed in accordance with this division. In no case may the child waive a right to a hearing of the type described in division (B)(3)(b) of this section, regarding a motion filed as described in that division by the prosecuting attorney in the case.

**{¶ 13}** R.C. 2152.121(B) requires the court to first determine whether what the juvenile pleaded guilty to, or was found guilty of, is subject to mandatory or discretionary transfer to the general division of the common pleas court. R.C. 2152.121(B)(3) further provides that if the juvenile is convicted of, or pleads guilty to, an offense that would have been subject to discretionary transfer, the court must impose a sentence on the child for the offense but must stay the sentence and transfer the child to the juvenile court for further proceedings outlined in R.C. 2152.121(B)(3)(a) and (b). Because transfer to the juvenile court is only required if the child is convicted of, or pleaded guilty to, an offense that would be subject to discretionary bindover, the court is not required to transfer the child to the juvenile court if the child is convicted of, or pleads guilty to, an offense subject to mandatory bindover. In other words, if the juvenile is convicted of, or pleads guilty to, an offense subject to mandatory bindover, the court must sentence the juvenile on the offense in the same way it would sentence an adult defendant for the same offense. Where the child is convicted of a "mandatory-bindover offense," transfer is not required. We must, therefore, determine whether Peak's aggravated robbery conviction qualifies as a mandatory-bindover offense.

**{¶ 14}** R.C. 2152.10 governs mandatory and discretionary transfers and states a child is subject to mandatory bindover if:

> (2) The child is charged with a category two offense, other than a violation of section 2905.01 of the Revised Code,[1] the child was

---

[1] R.C. 2905.01 pertains to kidnapping and is inapplicable here.

sixteen years of age or older at the time of the commission of the act charged, and * * *

* * *

(b) The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.

{¶ 15} Peak pleaded guilty to aggravated robbery in violation of R.C. 2911.01(A)(1), which is a category-two offense. R.C. 2152.02(BB)(1). And, Peak was 17 years old at the time of the offense. Moreover, Peak pleaded guilty to aggravated robbery in violation of R.C. 2911.01(A)(1), which states that "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" Count 7 of the indictment, charging aggravated robbery, alleges that Peak

did, in attempting or committing a theft offense, as defined in section 2913.01 and 2913.02 of the Revised Code, or in fleeing immediately after the attempt or offense upon [the victim] did have a deadly weapon, to wit: firearm, on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it.

The charge specifically alleges that Peak possessed and used a firearm during the commission of the offense. And Peak admitted, by virtue of his guilty plea, that he had a firearm on or about his person or under his control and did display or brandish the firearm during the commission of the offense. This fact is established without

regard to Peak's guilty plea to the one-year firearm specification because the indictment alleged that he committed aggravated robbery in violation of R.C. 2911.01(A)(1) with a firearm. Peak's guilty plea to the one-year firearm specification further confirms his use of a firearm while committing the category-two offense but was not necessary to establish that the charge was subject to mandatory bindover. *See, e.g., State v. Brookshire*, 2d Dist. Montgomery No. 25859, 2014-Ohio-5368 (juvenile's guilty plea to two aggravated robbery offenses held subject to mandatory bindover based on juvenile's age, the nature of his crime, and that he was alleged to have possessed a firearm even though all firearm specifications had been dismissed). Therefore, all the elements necessary to establish a mandatory-bindover offense are met in this case, and the trial court properly denied Peak's request for reverse bindover.

{¶ 16} The first assignment of error is overruled.

## B. Guilty Plea

{¶ 17} In the second assignment of error, Peak argues the trial court erred in denying his post-sentence motion to withdraw his guilty plea. Peak claims he entered his guilty pleas with the understanding that he would be returned to the juvenile court for an amenability hearing and that when the state opposed his motion for reverse bindover, it breached the plea agreement.

{¶ 18} Peak filed the motion to withdraw his guilty pleas after sentencing. A motion to withdraw a guilty plea is governed by Crim.R. 32.1, which states that "[a] motion to withdraw a plea of guilty * * * may be made only before sentence is

imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Thus, a post-sentence withdrawal of a guilty or no contest plea is permissible only in extraordinary cases to prevent manifest injustice. *State v. Simmons*, 8th Dist. Cuyahoga No. 109786, 2021-Ohio-1656, ¶ 16, 20. "'Manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.'" *State v. Stovall*, 8th Dist. Cuyahoga No. 104787, 2017-Ohio-2661, ¶ 17, quoting *State v. Williams*, 10th Dist. Franklin No. 03AP-1214, 2004-Ohio-6123, ¶ 5.

{¶ 19} We review a trial court's denial of a post-sentence motion to withdraw a guilty or no contest plea for an abuse of discretion. *State v. Straley*, 159 Ohio St.3d 82, 2019-Ohio-5206, 147 N.E.3d 623, ¶ 15. An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. In other words, a court also abuses its discretion "when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19.

{¶ 20} Peak contends that by objecting to his request for reverse bindover, the state violated the plea agreement and created a manifest injustice. However, there is no evidence that the state promised to refrain from objecting to reverse bindover. At the plea hearing, the prosecutor placed the plea agreement on the

record, outlined the amended counts to which Peak would be pleading guilty as well as the counts that would be nolled. The prosecutor stated: "No threats or promises were made in order to induce the defendant to accepting this deal[.]" (Tr. 5.) Defense counsel confirmed that the prosecutor's recitation of the parties' agreement was accurate and that "no threats or promises were made to induce these pleas[.]" (Tr. 6.) Thereafter, the court advised Peak of the potential adult penalties that could be imposed on him by virtue of his guilty pleas, including many years in adult prison. Peak stated that he understood the penalties. (Tr. 7-15.)

{¶ 21} The sentencing transcript clearly shows that a promise of reverse bindover was never part of the plea agreement. Peak's written motion to withdraw his guilty plea suggests that his attorney believed he would be eligible for reverse bindover. However, this court has held that an attorney's promise to his client regarding an expected sentence does not create a manifest injustice. *State v. Simmons*, 8th Dist. Cuyahoga No. 94982, 2010-Ohio-6188, ¶ 13. This is particularly true where the record shows that the court properly advised the defendant of the potential penalties. *Id.* Thus, even if Peak's attorney erroneously advised Peak that he would be eligible for reverse bindover, such a promise was vitiated by the trial court Crim.R. 11 colloquy.

{¶ 22} On a post-sentence motion to withdraw a plea, the defendant has the burden of showing the existence of a manifest injustice. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. Peak fails to meet his burden in this case. Accordingly, the second assignment of error is overruled.

**{¶ 23}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., and
ANITA LASTER MAYS, J., CONCUR