[Cite as *Cleveland Fire Fighters Assn., Local 93 v. Cleveland*, 2022-Ohio-824.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ASSOCIATION OF CLEVELAND
FIRE FIGHTERS, LOCAL 93,            :

      Petitioner-Appellee,            :

                        No. 110704

      v.                        :

CITY OF CLEVELAND,                 :

      Respondent-Appellant.            :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED
**RELEASED AND JOURNALIZED:** March 17, 2022

Administrative Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-924008

*Appearances:*

Diemert & Associates Co., L.P.A., Thomas M. Hanculak,
and Mark V. Guidetti, *for appellee*.

Zashin & Rich Co., L.P.A., Patrick M. Watts, and Jessi L.
Ziska, *for appellant*.

MARY J. BOYLE, J.:

{¶ 1} Respondent-appellant, the city of Cleveland, appeals the judgment of

the Cuyahoga County Court of Common Pleas granting the motion of petitioner-

appellee, Association of Cleveland Fire Fighters, Local 93 ("the Union"), to vacate

the arbitration award (in part) and sustain the Union's grievance in its entirety. For the reasons set forth below, we vacate the judgment and reinstate the arbitration award.

{¶ 2} On August 10, 2018, former Assistant Fire Chief David Viancourt ("Viancourt") was reaching the end of a double shift at 8:00 a.m. Viancourt was to be relieved by Assistant Chief Michael Zedella, who had called off work the night before. According to division procedure, one of the assistant chief's responsibilities is filling officer vacancies throughout the division. In the event of a call-off, division procedure required Viancourt to find his own replacement.

{¶ 3} Two months prior, on June 4, 2018, Fire Chief Angelo Calvillo ("Chief") had issued a directive changing division procedure from finding a replacement from among off-duty individuals of the same rank to on-duty individuals of a lower rank. This directive was intended to limit payment of overtime. According to the directive, Viancourt had to find his replacement from among on-duty battalion chiefs according to their seniority. A battalion chief is one rank below an assistant chief.

{¶ 4} Viancourt reviewed the schedule and believed the on-duty battalion chiefs were either ineligible or inexperienced to act as assistant chief. Of the four battalion chiefs scheduled that day, two had less than the required six months as battalion chief needed to serve as acting assistant chief, and Viancourt believed the remaining two would not perform well in the position. Viancourt believed that the senior battalion chief had very little experience as a command officer and the other

eligible battalion officer was struggling with personal problems that rendered him ill-equipped to serve as acting assistant chief.

{¶ 5} At 8:13 a.m., Viancourt texted the Chief to apprise him of the battalion chief who would be replacing him under the directive and ask whether that was who the Chief wanted. The Chief was on vacation and did not immediately reply. At approximately 8:25 a.m., Viancourt realized the Chief was on vacation and called Acting Fire Chief Michael Odum ("Acting Chief") to share his concerns, requesting permission to deviate from the procedure and bolster the officer corps on duty that day. The Acting Chief ordered Viancourt to follow the directive as written.

{¶ 6} After this call, Viancourt began to execute the directive, calling the senior battalion chief, who declined to serve as acting assistant chief. Viancourt continued down the seniority list to the only other eligible battalion chief, who initially refused. With no other options, Viancourt ordered this second battalion chief to act as assistant chief. The battalion chief reluctantly agreed, adding that he was accepting the assignment under duress. Viancourt then ordered a less experienced officer to cover the battalion chief's vacancy while the battalion chief traveled to relieve Viancourt.

{¶ 7} At 9:00 a.m., the Chief replied to Viancourt's initial text message, stating that he approved of the senior on-duty battalion chief's acting as assistant chief if she agreed to be assigned that detail. The Chief also stated that he was out of town and that the Acting Chief was in charge. At 9:05 a.m., Viancourt texted to inform the Chief that the Acting Chief did not permit a deviation from the

replacement procedure and asked if the Chief would grant this permission. At 9:09 a.m., the Chief texted his reply, declining the request and directing Viancourt to follow the Acting Chief's order. At 9:42 a.m., Viancourt texted that he understood, but added, "I want to go on record that it is my professional opinion that this is an unsafe situation due to the gross lack of experience at the BC/AC [battalion chief and assistant chief] ranks."

{¶ 8} The battalion chief arrived to relieve Viancourt shortly after 10:00 a.m. While they were transferring command, the Acting Chief's administrative assistant informed Viancourt that the Acting Chief wanted to meet with Viancourt. During their meeting, Viancourt again shared his concerns with the Acting Chief. The Acting Chief stated that he would provide support for the battalion chief who had relieved Viancourt. After this meeting, Viancourt clocked out at 11:00 a.m.

{¶ 9} Ten days later, on August 20, 2018, the Acting Chief filed 16 disciplinary charges against Viancourt, which included (1) willfully disobeying an oral or written directive issued by a superior officer; (2) failure to carry out a directive; (3) acting in contravention of a directive; (4) failure to transmit information through the chain of command; (5) neglect of duty; (6) incompetence or inefficiency in performing duties; (7) conduct unbecoming an employee in the public service; (8) insubordination; (9) offensive conduct or language toward superiors in the course of employment; (10) willful violation of the rules and regulations of the Cleveland Civil Service Commission; (11) behavior that is

detrimental to the service or an act of misfeasance, malfeasance, or nonfeasance in office; (12) conduct subversive to the good order and discipline of the division; (13) insubordination, disrespect, or insolence to a superior officer; (14) neglecting, evading, or shirking duties; (15) transacting administrative business outside proper official channels; and (16) failing to address communications to or through the officer having proper authority. Although the Acting Chief charged Viancourt with insubordination, he described Viancourt's conduct as "gross insubordination" in the specifications section of the charging document.

{¶ 10} The division's disciplinary guide divides "unacceptable conduct" into five categories of offenses according to their level of seriousness. "Conduct unbecoming" is a group 2 offense punishable by official reprimand and up to a 24-hour suspension. "Insubordination" is a group 3 offense punishable by official reprimand and up to a 72-hour suspension. "Gross insubordination" is a group 4 offense requiring referral to the safety director for possible suspension exceeding 72 hours, demotion, or termination. The disciplinary guide provides that the chief of fire makes final decisions on discipline up to and including suspension of three 24-hour shifts without pay and may consider aggravating and mitigating circumstances for upward or downward departures from the guide.

{¶ 11} On September 19, 2018, a predisciplinary hearing was held before the Chief. The Chief found Viancourt guilty of all 16 charges as written by the Acting Chief in the August 20, 2018 charging document. The Chief issued an official reprimand that would remain in Viancourt's personnel record for a three-year

period from the date of the hearing and suspended Viancourt from duty for 24 hours without pay. Although finding Viancourt guilty of gross insubordination (a group 4 offense), the Chief issued a penalty commensurate with insubordination (a group 3 offense) or conduct unbecoming (a group 2 offense), determining that Viancourt's many years of exemplary service, all without discipline, was a mitigating factor.

{¶ 12} On September 28, 2018, the Union grieved the disciplinary sanctions against Viancourt as violating the Collective Bargaining Agreement ("CBA") between the Union and the city. The Union alleged that the sanctions were issued without just cause, were not supported by the evidence, and were "excessive in light of all the facts and circumstances" and "disparate in light of similar circumstances." The Union requested that Viancourt's one-day suspension be reversed and the reprimand be removed from Viancourt's personnel record.

{¶ 13} On October 16, 2018, pursuant to the grievance process, the matter proceeded to a predisciplinary hearing before the city's assistant safety director, Laura Palinkas ("Assistant Safety Director"). The Assistant Safety Director heard testimony from Viancourt and the Acting Chief. On October 19, 2018, the Assistant Safety Director issued a written opinion denying the grievance in its entirety. In the opinion, the Assistant Safety Director found that although Viancourt followed the directive, he did so only after "second-guessing" and asking twice to deviate from the Chief's directive and the Acting Chief's order. The Assistant Safety Director observed that Viancourt had testified that he only contacted the Chief "because the Chief likes to know everything that's going on, even when he is on vacation." The

Assistant Safety Director also observed that reporting to two superiors at once "could encourage the very insubordination the Chief is seeking to curtail." The Assistant Safety Director concluded, however, that Viancourt should have executed the Acting Chief's order without asking the Chief's permission to deviate from the replacement directive.

{¶ 14} On October 23, 2018, pursuant to the CBA, the Union requested review by the city's human resources department. On January 17, 2019, the city's human resources department denied the grievance, finding that Viancourt "purposely circumvented his Chain of Command and questioned the authority of his ranking officers."

{¶ 15} The matter proceeded to binding arbitration administered by the American Arbitration Association. According to the terms of the CBA,

> In the event a grievance goes to arbitration, the arbitrator shall have jurisdiction only over disputes arising out of grievances as to the interpretation and/or application and/or compliance with the provisions of this Contract, including all disciplinary actions and in reaching this decision, the arbitrator shall have no authority (1) to add to or subtract from or modify in any way any of the provisions of this Contract; (2) to pass upon issues governed by law; or (3) to make an award in conflict with law.

{¶ 16} Prior to the arbitration, the parties stipulated that the arbitrator would resolve the following issues: "Did the City of Cleveland have just cause to suspend Grievant Viancourt for one day and issue an official reprimand? If not, what should be the appropriate remedy?" An arbitration was held on May 16, 2019.

**{¶ 17}** On July 29, 2019, the arbitrator issued a written opinion and award. The arbitrator found that despite expressing concerns, Viancourt executed the Chief's replacement directive upon the Acting Chief's order without unreasonable delay. The arbitrator also found, however, that Viancourt "took advantage of a delayed response from Chief Calvillo and asked that the Chief overrule the Acting Chief." The arbitrator reasoned that because the Acting Chief had been delegated full authority to act as chief, the request Viancourt made to the Chief to deviate from the replacement directive went "beyond * * * simply providing sufficient information to make a good decision" and "amount[ed] to a clear effort to interfere with the chain of command in an organization where speed as well as accurate information and adherence to a chain of command are all essential for public safety." The arbitrator further reasoned that Viancourt's safety concerns about staffing were "his opinion or projection and not a fact demanding immediate overturning of normal chain of command processes." (Emphasis sic.) The arbitrator found that Viancourt "did not simply 'disobey' which is an element critical to any definition of insubordination." (Emphasis sic.). Rather, Viancourt "obeyed but continued his efforts to change replacement policies after being told by his immediate superior that deviation would not be allowed." The arbitrator held that gross insubordination was unjustified, but also that it was "important to impose some penalty to clearly indicate that the conduct exhibited by [Viancourt] was not appropriate." The arbitrator therefore made the following award:

> Just Cause was not demonstrated for Gross Insubordination as alleged by the City. [Viancourt] is to have the charge of Gross Insubordination removed from his personnel records and is to be made whole for any wages or benefits lost as a result of the initial judgment.
>
> [Viancourt] <u>is</u> found to have violated Conduct Unbecoming provisions (a Group 2 offense) of the discipline guide.

(Emphasis sic.)

{¶ 18} On October 25, 2019, pursuant to R.C. Chapter 2711, the Union filed a motion in the Cuyahoga County Court of Common Pleas to vacate (in part) the arbitrator's award finding Viancourt's conduct unbecoming and upholding the official reprimand, but removing the 24-hour suspension. The Union argued that the city had "fail[ed] to prove just cause for *any* discipline and thus the award failed to draw its essence from the parties' Contract." (Emphasis sic.) The city argued that the Union's motion to vacate should be denied because it failed to meet its burden of showing that the arbitrator exceeded his powers under R.C. 2711.10(D).

{¶ 19} On July 1, 2021, the common pleas court issued a written opinion sustaining the Union's grievance in its entirety and vacating the portion of the award that concluded that Viancourt had engaged in conduct unbecoming. In reaching this decision, the court found that the award "d[id] not 'draw its essence' from the CBA since no rational nexus existed with the CBA, and because the Arbitrator acted in an arbitrary manner charging AC [Assistant Chief] Viancourt with conduct unbecoming of an officer." The court reasoned that

> The Arbitrator stated that the "sole question" before him was "whether or not [Viancourt] acted in such a way that it is reasonable to sustain a charge of gross insubordination." * * * After finding there was no just cause for the insubordination charges, the Arbitrator found that "it is

also important to impose some penalty to clearly indicate that the conduct exhibited by [Viancourt] was not appropriate," and unilaterally charged him for "conduct unbecoming" of an officer. * * * The only question before the Arbitrator was whether it was reasonable to charge AC Viancourt with gross insubordination—not to apply an arbitrary penalty to show that AC Viancourt acted inappropriately. Therefore, the Arbitrator exceeded his powers by crafting an arbitrary punishment against AC Viancourt.

{¶ 20} The city appeals this judgment, raising the following assignment of error for review:

> The trial court erred when it vacated and/or modified the Arbitration Award and sustained Plaintiff-Appellee's grievance in its entirety.

{¶ 21} Within this assignment of error, the city argues that the common pleas court erred in conducting a de novo review of the arbitrator's award, finding that the arbitrator exceeded his powers, and substituting its own judgment for that of the arbitrator. The city contends that the arbitrator's determination that Viancourt engaged in conduct unbecoming and imposition of an official reprimand were rationally derived from the CBA. The city maintains that the common pleas "court incorrectly determined that the 'only question before the Arbitrator was whether it was reasonable to charge AC Viancourt with gross insubordination[.]" The Union argues that the arbitrator exceeded his authority by finding that Viancourt engaged in conduct unbecoming and imposing a penalty for that conduct. The Union maintains that "the Arbitrator framed the sole question before him as whether or not [Viancourt] act[ed] in such a way that it is reasonable to sustain a charge of gross insubordination" and should not have considered whether Viancourt engaged in conduct unbecoming.

{¶ 22} An arbitrator's authority is derived from the parties' agreement. *Goodyear Tire & Rubber Co. v. Local Union No. 200, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 42 Ohio St.2d 516, 519, 330 N.E.2d 703 (1975). Provided that the arbitrator acts within the scope of the agreement, he has great latitude when issuing a decision. *Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 6. An arbitrator's improper determination of the facts or misinterpretation of the agreement does not provide a basis for reversal of an award by a reviewing court. *Id.*, citing *Stolt-Nielsen, S.A. v. AnimalFeeds Internatl. Corp.*, 559 U.S. 662, 671, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). "Were the arbitrator's decision subject to reversal because a reviewing court disagreed with the findings of fact or with an interpretation of the contract, arbitration would become only an added proceeding and expense prior to final judicial determination," which would defeat the parties' bargain and "the strong public policy favoring private settlement of grievance disputes arising from collective bargaining agreements." *Goodyear Tire & Rubber* at 520. The arbitrator also has "broad authority to fashion a remedy, even if the remedy contemplated is not explicitly mentioned in the labor agreement." *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati*, 63 Ohio St.3d 403, 407, 588 N.E.2d 802 (1992).

{¶ 23} A common pleas court cannot easily vacate an arbitrator's award. *Bd. Of Trustees of Miami Twp. v. Fraternal Order of Police, Ohio Labor Council*, 81 Ohio St. 3d 269, 273, 690 N.E.2d 1262 (1998). The common pleas court's authority

to vacate the award is limited by R.C. Chapter 2711. *Ohio Patrolmen's Benevolent Assn. v. Findlay*, 149 Ohio St.3d 718, 2017-Ohio-2804, 77 N.E.3d 969, ¶ 15, citing *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland*, 99 Ohio St.3d 476, 2003-Ohio-4278, 793 N.E.2d 484, ¶ 13. Relevant to the instant case, R.C. 2711.10(D) requires the reviewing court to vacate the award when the arbitrator "exceeds [his] powers." *Id.*

{¶ 24} An arbitrator exceeds his powers when the award departs from the essence of the collective bargaining agreement. *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters* at ¶ 14. An award departs from the essence of the agreement when "(1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Employees Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St. 3d 177, 572 N.E.2d 71 (1991), paragraph one of the syllabus.

{¶ 25} Conversely, an arbitrator does not exceed his authority when the arbitration award draws its essence from the agreement. *Queen City Lodge No. 69, FOP, Hamilton Cty., Ohio, Inc.*, 63 Ohio St.3d at 406 (citations omitted). "An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 488 N.E.2d 872 (1986), paragraph one of the syllabus. "'Once it is determined that the

arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award pursuant to R.C 2711.10(D) is at an end.'" *Adams Cty./Ohio Valley Local School v. OAPSE/AFSCME, Local 572*, 2017-Ohio-6929, 94 N.E.3d 937, ¶ 20 (4th Dist.), quoting *Bd. of Edn. of the Findlay City School Dist. v. Findlay Edn. Assn. et al.*, 49 Ohio St.3d 129, 551 N.E.2d 186 (1990), paragraph two of the syllabus.

{¶ 26} When reviewing a common pleas court's order vacating an arbitration award, "an appellate court should accept findings of fact that are not clearly erroneous but decide questions of law de novo." *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 153 Ohio St. 3d 219, 2018-Ohio-1590, 103 N.E.3d 804, syllabus, citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Whether an arbitrator has exceeded their authority pursuant to R.C. 2711.10(D) is a "'question of law'" that is reviewed de novo. *Id.* at ¶ 25, quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 974 (6th Cir.2000). Our de novo review on appeal, however, is not a de novo review of the merits of the dispute as presented to the arbitrator. *Adams Cty./Ohio Valley Local School* at ¶ 18, citing *Jackson Cty., Ohio Sheriff v. FOP Ohio Labor Council, Inc.*, 4th Dist. Jackson No. 02CA15, 2004-Ohio-3535, ¶ 19-20. Rather, we review the common pleas court's decision whether to vacate an arbitration award "de novo to see whether any of the statutory grounds for vacating an award exist." *Id.*

{¶ 27} Here, the CBA recognizes the city's right to suspend or discipline an employee for just cause and authorizes the chief of fire to suspend an employee for up to three 24-hour shifts. Pursuant to the discipline guide, gross insubordination is punishable by termination, demotion, and/or suspension exceeding 72 hours. Insubordination is punishable by official reprimand and suspension up to 72 hours. Conduct unbecoming is punishable by official reprimand and suspension up to 24 hours. Therefore, the CBA and discipline guide permit the chief of fire to discipline an employee for any of these offenses, provided the discipline does not exceed a 72-hour suspension without pay.

{¶ 28} The discipline guide also provides that penalties may be adjusted to account for aggravating and mitigating circumstances. After his predisciplinary hearing, the Chief found Viancourt guilty of 16 different charges, including gross insubordination and conduct unbecoming, and disciplined Viancourt by an official reprimand and a 24-hour suspension without pay. A review of the discipline guide reveals that this penalty more closely resembles the penalties for either insubordination or conduct unbecoming, not gross insubordination. When issuing these penalties, the Chief stated that he accounted for Viancourt's many years of exemplary service, all without discipline, as a mitigating factor. The Chief's findings and sanctions were affirmed upon review by the city's safety director and human resources department at two different stages of the grievance process.

{¶ 29} Before the matter was submitted to arbitration, the parties stipulated to two questions to be resolved by the arbitrator: (1) "Did the City of Cleveland have

just cause to suspend Grievant Viancourt for one day and issue an official reprimand?" (2) "If not, what should be the appropriate remedy?" In reviewing the matter, the arbitrator found that

> [Viancourt] followed the order to assign replacements in a reasonable time frame. But he did so while continually challenging a clear directive. Such behavior could well undermine the chain of command in an organization that cannot operate effectively if every order is openly challenged, questioned and debated in the midst of a crisis.

> As noted by Chief Calvillo it is true that [Viancourt's] outstanding career should be considered in assessing any penalty for his behavior but that is a double edged sword. As a result of his career [Viancourt] had every reason to understand both the importance and fragility of a department's chain of command. Thus, while the penalty imposed by the city for gross insubordination is not justified it is also important to impose some penalty to clearly indicate that the conduct exhibited by [Viancourt] was not appropriate.

Consistent with these findings, the arbitrator removed the finding of gross insubordination from Viancourt's personnel record and made Viancourt whole for any lost wages or benefits resulting from his 24-hour suspension. However, this award did not remove the official reprimand from Viancourt's personnel record. As noted above, an official reprimand is one possible punishment for conduct unbecoming.

{¶ 30} In its opinion vacating the arbitrator's award, the common pleas court accepted the Union's claim that the "sole question" before the arbitrator was "whether or not [Viancourt] acted in such a way that it is reasonable to sustain a charge of gross insubordination," not whether Viancourt engaged in conduct unbecoming. The Union, however, misquotes the arbitrator's opinion. The arbitrator twice referred to the question before him as a "fundamental" question,

but not the sole question. At the opening of his opinion, the arbitrator states, "there is one fundamental question before this Arbitrator. Did [Viancourt] act in such a way that it is reasonable to sustain a charge of 'gross insubordination?'" At the close of his opinion, the arbitrator again states that "[t]he fundamental issue in this case is that [Viancourt] should not have been charged with insubordination much less gross insubordination." Although the "fundamental issue" before the arbitrator was whether Viancourt's conduct constituted gross insubordination, the arbitrator acknowledged that Viancourt was charged with a number of violations under the heading of gross insubordination. Among these charges was conduct unbecoming, which is punishable by an official reprimand under the discipline guide.

{¶ 31} In focusing solely on the question of gross insubordination, the Union disregards the fact that the parties stipulated to *two* questions before submitting the matter to arbitration. The first question was whether the city had just cause to suspend Viancourt for a day and issue him an official reprimand. The question of just cause was not confined to "gross insubordination." Rather, the question concerned whether the city had just cause discipline Viancourt for his conduct. The arbitrator plainly answered this question in the award. The arbitrator determined that the city did not have just cause to charge Viancourt with gross insubordination or punish Viancourt with a 24-hour suspension. The first part of the award therefore removes any mention of gross insubordination from Viancourt's personnel record and makes Viancourt whole for any wages or benefits he lost as a result of his suspension. However, removing gross insubordination from Viancourt's personnel

record is not the same as removing the written reprimand. Although the arbitrator does not mention the written reprimand in the award, the arbitrator's finding that Viancourt did engage in conduct unbecoming, which is punishable by official reprimand, does resolve the issue whether the city had just cause to issue Viancourt an official reprimand.

{¶ 32} The Union nevertheless maintains that the arbitrator exceeded his powers by creating a new charge not submitted to arbitration and issuing a penalty based on that charge. The charge of conduct unbecoming was not expressly submitted to arbitration in the parties' stipulated questions, but neither were the charges of gross insubordination or insubordination expressly submitted to arbitration. The questions to which the parties stipulated focused on remedies: the penalties Viancourt had received for his conduct and, if these penalties were unjustified, the penalty the arbitrator determined that Viancourt should receive for his conduct. The Union's claim that the arbitrator created a new charge by finding that Viancourt engaged in conduct unbecoming is not supported by the record. Viancourt was charged with 16 violations, which included the charge of conduct unbecoming. The Union's claim that any penalty based on that charge was improper is also not supported by the record because conduct unbecoming is punishable by official reprimand. The arbitrator's leaving this penalty intact is consistent with the discipline guide.

{¶ 33} Further, the second question the parties submitted to arbitration recognizes the latitude an arbitrator has in fashioning the award. *Queen City Lodge*

*No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc.*, 63 Ohio St.3d at 407. The parties asked the arbitrator to fashion an appropriate remedy based on Viancourt's conduct. The award retains the official reprimand based on a finding of conduct unbecoming. This award is not in conflict with and is rationally derived from the discipline guide and draws its essence from the CBA. The award also resolves the two questions about the appropriate remedy that the parties submitted to arbitration. Therefore, the common pleas court erred when it found that the arbitrator exceeded his powers in finding Viancourt's conduct unbecoming and crafted an arbitrary penalty by retaining the official reprimand as part of Viancourt's personnel record.

{¶ 34} The city's sole assignment of error is sustained.

{¶ 35} Accordingly, the judgment is vacated, and the arbitration award retaining the official reprimand based on a finding of conduct unbecoming is reinstated.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR